[Civil No. 1910.   Filed January 20, 1922.]

[203 Pac. 560.]

QUIN FAULKNER, LAURA RICHARDSON and ELIZABETH HARRIS, Appellants, v. EDWARD JOHN FAULKNER, Administrator of the Estate of ELLEN FAULKNER, HUGHIE M. FAULKNER, EMMA FAULKNER, EDWARD JOHN FAULKNER, ALICE M. BARKLEY and GEORGE GATES FAULKNER, Appellees.

1. EXECUTORS AND ADMINISTRATORS — DECEDENT'S DEBTS PRESUMED PAID OR BARRED BY LIMITATIONS ON PETITION FOR APPOINTMENT OF ADMINISTRATOR EIGHT YEARS AFTER DEATH.—On petition for appointment of administrator more than eight years after decedent's death, it will be presumed, in the absence of showing to the contrary, that debts against the estate have been paid or are barred by the statute of limitations.

2. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR PRIMARILY REPRESENTS CREDITOR AND SECONDARILY HEIRS.—An administrator primarily represents the creditors and secondarily the heirs.

3. EXECUTORS AND ADMINISTRATORS—LAND PURCHASED WITH PROCEEDS OF SALE OF DECEDENT'S LAND WITHOUT ADMINISTRATION BY CONSENT OF HEIRS NOT SUBJECT TO ADMINISTRATION AS ESTATE OF DECEASED.—Where surviving husband sold deceased wife's land without administration with children's consent, the land purchased by husband with the proceeds will not be administered as the wife's estate on the children's application for appointment of administrator eight years thereafter, since the property so purchased by husband is not a part of the wife's estate, not having been owned by her at time of her death, and since the children's rights as to such land were not those of wife's heirs, but were based upon either express or implied contract, made when the wife's land was sold without administration.

4. DESCENT AND DISTRIBUTION — DECEDENT'S LAND SOLD BY HEIRS WITHOUT ADMINISTRATION SUBJECT TO PAYMENT OF DECEDENT'S DEBTS.—Decedent's land, sold without administration with the consent of all the heirs, can be subjected to payment of decedent's debts even after its sale by the heirs under Civil Code of 1913, paragraph 904.

5. EXECUTORS AND ADMINISTRATORS — SETTLEMENT OF ESTATES WITH-
OUT ADMINISTRATION BY AGREEMENT BETWEEN HEIRS FAVORED.—
The settlement of the estate of decedents by agreement between
heirs without administration, where fairly made, and where the
rights of creditors are not affected, is favored by the law.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. F. H. Lyman, Judge.
Reversed.

Mr. F. C. Struckmeyer, Mr. Thomas W. Nealon and
Messrs. Baker & Whitney, for Appellants.

Messrs. Phillips, Cox & Phillips, for Appellees.

ROSS, C. J.—Hughie M. Faulkner, Emma Faulk-
ner, Edward John Faulkner and Alice M. Barkley,
formerly Alice M. Faulkner, filed their petition in the
superior court of Maricopa county, asking that Ed-
ward John Faulkner be appointed the administrator
of the estate of Ellen Faulkner, deceased. The peti-
tion was resisted by Quin Faulkner, surviving hus-
band of Ellen Faulkner, and Laura Richardson and
Elizabeth Harris. After a hearing the court made
an order appointing Edward John Faulkner adminis-
trator of the estate of Ellen Faulkner, deceased, and
at the same time entered its order refusing to appoint
Laura Richardson, designated by Quin Faulkner, sur-
viving husband, as his choice of administrator. The
appeal is from these two orders, and, as appellants
say in their notice of appeal, from "all other orders
and decisions made" at the same time.

The petition for letters, and papers filed in resist-
ance thereto, show this state of facts: Ellen Faulkner
died intestate August 12, 1912, leaving surviving her
Quin Faulkner, her husband, and the following named
children, issues of her marriage with Quin Faulkner,
to wit: Hughie M., Emma, Edward John, Alice M.
(Barkley), Elizabeth (Harris), Laura (Richardson),

and George Faulkner. At the time of Ellen Faulkner's death the E. ½ of the S. W. ¼ of the S. W. ¼ and the W. ½ of the S. E. ¼ of section 6, township 1 north, range 2 east, Maricopa county, and some dairy cows and dry cattle and dairy utensils were possessed by her, either as community or as separate property. Most probably it was community property, although there is some contention that it was bought and paid for out of her separate funds many years before. Its character, whether community or separate property, has little bearing upon the result as we see it. In 1918 Quin Faulkner and all of the children, Hughie M., Emma, Elizabeth Harris, and Laura Richardson, being of age, and Alice M. Faulkner, Edward John, and George, being minors, by and through their guardian, Quin Faulkner, united in selling and conveying all of said described lands and chattels to a third party for a consideration of $15,000 cash. This $15,000 was invested in other real property described in their petition, the title to which appears in the name of Quin Faulkner, and the claim is that it is subject to administration as assets of Ellen Faulkner's estate. It is this newly acquired property that is described in petition as belonging to Ellen Faulkner's estate.

There is no allegation in the petition for letters or suggestion or pretense that administration of Ellen Faulkner's estate was necessary to pay debts, or that there were any debts. In that connection it is significant that more than eight years had elapsed since the death of Ellen Faulkner before the petition for letters was filed. If there had been any debts against the estate it is reasonable to presume that they had been paid, or that they were barred by the statute of limitation, especially where there is no claim for the existence of any creditors in the petition, nor any suggestion of any in the hearing on the petition. It has

been held by some courts that a long lapse of time since the death of the decedent without administration may raise the presumption against the necessity for any administration. 23 C. J. 1003, § 18, note 81. The administrator, when one is appointed, primarily represents the creditors, and secondarily the heirs (*Mutual Life Ins. Co.* v. *Farmers & Mechanics' Nat. Bank* (C. C.), 173 Fed. 390, 396), and where there are no creditors one of the considerations for the appointment of the administrator disappears.

It is apparent from the petition, and otherwise, that the object in asking administration at this date is not to administer the property Ellen Faulkner died seized with, but to administer as her estate the property bought with the sum realized from the sale of the dairy ranch and dairy cattle, a sale in which all the heirs united. There is no charge that the property the deceased had at the time of her death was disposed of against the will or to the damage of any of the petitioners. On the contrary, it appears that they all consented to the sale of that particular property. So the element of fraud or coercion is entirely absent. The petitioners not only do not complain of the sale and transfer of all the assets of the estate, but by claiming the property acquired by Quin Faulkner from the proceeds of such sale as assets they ratify and confirm the sale. Whatever rights they have in the property bought with the proceeds of the assets of decedent's estate are certainly not by reason of the law of descent and distribution. Their interests in the newly acquired property must be based upon contract either express or implied. In other words, the property bought with the estate money and deeded to Quin Faulkner is not itself a part of the estate of the decedent and subject to administration. It is not assets.

" 'In an accurate and legal sense,' says Justice STORY, 'all personal property of the deceased, which is of a salable nature, and may be converted into ready money, is deemed assets. But the word is not confined to such property; for all other property of the deceased, which is chargeable with his debts and legacies, and is applicable to that purpose, is, in a large sense, assets.' " *Mutual Life Ins. Co.* v. *Farmers & Mechanics',Nat. Bank, supra.*

It will be noticed that it, is the "property of deceased" that is assets; that is property owned by her in her lifetime. 23 C. J. 1125, section 317, says:

"The word 'assets' is used to designate such property belonging to the estate of a deceased person as may rightfully be charged with the obligations which his executor or administrator is bound to discharge."

Now the property of the estate of Ellen Faulkner, to wit, the dairy ranch and cattle, could not by the heirs be transmuted into other property so as to escape the payment of the debts of the decedent. The creditors, if any, could subject the said property to the payment of their debts, even after its sale by the heirs, and in a proper case, doubtless, could have the same administered upon as part of the estate for the purpose of liquidating debts of the decedent. Under the law of succession in this state and generally, we believe, the heirs take the estate charged with the debts and obligations of the decedent. The rule in that regard in Arizona is stated in paragraph 904, Civil Code, as follows:

"All the property of a decedent shall be chargeable with the payment of the debts of the deceased, the expenses of administration, and the allowance to the family, except as otherwise provided by law. And the said property, personal and real, may be sold as the court may direct, in the manner prescribed in this chapter. There shall be no priority as between personal and real property for the above purposes."

But the property encumbered with the decedent's debts and the expenses of administration and family allowances is the property, real and personal, that he owned in his lifetime.    23 C. J. 998, § 8.

It is apparent that the relation existing between the parties to this litigation in 1918 when they came together and agreed upon the sale and disposition of the assets of the decedent's estate were very much more harmonious than they were at the time of filing the petition for letters of administration, to wit, December, 1920.    At the first date all of the children, together with the surviving husband, were obviously agreeable to a family settlement of the estate without any expense or trouble of administration, and they did concert together to that end.    Mr. Justice COOLEY, in *Brown* v. *Forsche,* 43 Mich. 492, 5 N. W. 1011, speaking of such action, says:

"Formal proceedings for the settlement of an estate are never necessary if all parties concerned can agree to dispense with them.    Family arrangements for this purpose, it is said, are favorites of the law, and, when fairly made, are never allowed to be disturbed by the parties, or by any others for them."

Another statement of this rule is:

"Family agreements in the settlement of estates are favorites of the law, and when fairly made, and the rights of creditors are not affected, are not usually allowed to be disturbed by the parties, or by any others for them."    11 R. C. L., § 15.

Under these authorities the settlement made by the parties to this controversy in 1918 was one sanctioned by the law.    If the petitioners, instead of taking or demanding their proportion of the receipts from the sale of the assets of the estate of the decedent, preferred to leave their proportion with their father for investment, as the record shows to be their contention, a settlement of the rights growing out of such

an arrangement must be had in a proceeding other than probate. Their rights in the newly acquired property are to be measured by the terms of their agreement with their father, or such an agreement as the law might imply from the relation of the parties and the circumstances of the transaction, and the forum in which to establish the agreement is one exercising general common-law and equity jurisdiction. Because at the time the petition for the appointment of administrator was filed the estate of the decedent had all been settled by the heirs, leaving nothing to administer, the order of the lower court in appointing an administrator at all was error.

The order appointing Edward John Faulkner administrator of the estate of Ellen Faulkner is reversed and the cause is remanded, with directions that the petition for letters of administration be dismissed.

McALISTER and FLANIGAN, JJ., concur.