## LINDLEY v. LINDLEY.

### No. 14824.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 21, 1947.

Rehearing Denied April 11, 1947.

Clyde Vinson, of San Angelo, and Walter B. Scott and Joe F. Orr, both of Fort Worth, for appellant.

Freeman & Wardlaw, of Fort Worth, M. Hendricks Brown, of Fort Worth, and J. Edward Johnson, of Brownwood, for appellee.

SPEER, Justice.

This case arose in the Probate Court of Tarrant County when Mrs. Willie D. Lindley as the surviving wife of Dr. R. H. Lindley, deceased, as applicant filed a petition to be named administratrix of her deceased husband's estate. The application contained all requisites provided in Article 3332, Vernon's Tex.Civ.St.

The application was contested by J. T. Lindley, a son of Dr. R. H. Lindley, principally upon the allegations that deceased owned no estate at the time of his death; that there being no property belonging to the estate and therefore nothing to administer upon, no necessity existed for administration. That deceased owed no debts at the time of his death and none were owing to him; that deceased's bills for his last sickness and funeral had all been paid by funds furnished by contestant for that purpose, and if any remain unpaid he stands ready, able, and willing to pay them; that deceased did not in fact die intestate; that he left a will bequeathing all property to contestant but that because nothing passed under the will, no necessity existed for its probate. That long prior to his death decedent had conveyed to contestant all property of every kind and character owned by him. Contestant prayed that administration be denied.

Applicant replied to contestant's pleadings by general denial, and specially, reasserting that there were debts against the estate, and further that in good faith, deceased, had, in his lifetime, filed a suit, which was then pending in the district court, against contestant, in which suit it was alleged that contestant held the property belonging to his father in trust and not in fee simple as claimed by him; that the estate was worth $125,000; that a necessity for administration existed so that an administrator could and would prosecute said suit, for the purpose of bringing said property back into the estate where it properly belonged. There are other allegations referable to applicant's homestead rights, allowances in lieu thereof and her interest in his separate personal property requiring the jurisdictional orders and decrees of the probate court.

The Probate Court denied applicant's petition for administration, and she appealed to the district court, where it was again tried and again administration was denied, from which judgment she has appealed to this court.

The record before us reveals some undisputed facts which are essential to a complete understanding of the controversy, they are: Dr. Lindley, deceased, was formerly married and divorced. The date of divorce is not given. There were two children born to that union, J. T. Lindley (contestant) and Mrs. Wilma Crenshaw, the wife of F. W. Crenshaw. At about the time of the divorce or shortly thereafter, probably in 1935 and 1938, Dr. Lindley conveyed by warranty deed to J. T. Lindley, all real estate and in it, all personal property, then owned by him, reciting love and affection. In the conveyance were lands in Tom Green, Tarrant, Gaines, Andrews,

Hunt and Hopkins Counties. Dr. Lindley, deceased, was married to Willie D. Lindley, applicant, in June, 1943, and they then began residing on certain property enumerated above as being in Tarrant County.

Dr. Bristow, called by applicant, showed that he had known Dr. Lindley since 1917 and had known him very intimately for about three years before he died; that for the last two years of his life, his health was very poor and he was physically unable to take care of himself or attend to business. Dr. Lindley was taken to the hospital on April 23, 1946, and died May 14, 1946.

On April 24, 1946, a suit was filed in district court of Tarrant County, the petition, omitting style, Number and caption, in part, reads: "Come now R. H. Lindley by his next friend, Willie D. Lindley, and Willie D. Lindley individually hereinafter called plaintiff, complaining of J. T. Lindley and his wife Florence Lindley, hereinafter called defendants, and represent to the Court."

The petition discloses that plaintiffs sought to cancel any and all purported deeds of conveyance by R. H. Lindley to J. T. Lindley, and asserts that all the property referred to in the several counties above mentioned were in the possession of J. T. Lindley, that he had not accounted for the rents and revenues thereon; that the property was only conveyed to him in trust to be reconveyed to grantor when requested. Prayer was for cancellation, recovery of the property and an accounting.

It is earnestly urged by applicant that the prosecution of the above mentioned suit and the existence of debts, which we shall later notice, presented ample grounds to show the necessity for administration.

It was further undisputed upon the trial that at the time of Dr. Lindley's death there were in his and applicant's possession certain articles of personal property. Applicant named them and their values as follows: Furniture in the home, $750; Furniture in Tourist Court Apartments, $750; Garden and yard tools, $25; Surgical instruments, $750; one automobile, $500; One automobile, $1000. (Aggregating $3,-600.) Before the trial was finished, J. T. Lindley and his sister Mrs. Crenshaw

joined by her husband, executed to applicant an instrument in writing by the terms of which the "assign, transfer, give and relinquish any interest or claim which we may have in and to any of the above described personal property to Mrs. Willie D. Lindley. * * *." There is nothing in the record to indicate when any or all of the above enumerated personalty was acquired either by Dr. Lindley or Mrs. Lindley or both.

It was stipulated at the trial that the real estate described in the suit pending in district court had a value of at least $50,000.

At the request of applicant, the trial court filed findings of fact and conclusions of law. They are substantially as follows: (1) Dr. Lindley died at the place of his residence in Tarrant County on May 14, 1946. (2) No debts of decedent now exist, but all have been paid by applicant out of the separate funds of deceased. (3) Decedent's estate owns no property upon which administration can be had. (4) All personal, separate and community property of deceased has been relinquished to applicant by the only heirs of deceased. (5) Applicant has a pending suit in district court to establish that all property, the legal title to which is in contestant, was held by him in trust for deceased. (6) There is no evidence that deceased died intestate.

Conclusions of law were substantially that: (1) No necessity exists for administration on the estate of deceased. (2) Applicant can prosecute her pending suit without administration. (3) There is no property belonging to decedent's estate upon which administration can be had.

Points of error 1, 2, 3, and 4 are substantially: (1) The fact findings by the court which form the basis for his judgment, were not supported by but were contrary to the undisputed testimony; (2) Where a suit has been brought by decedent for cancellation of an instrument and recovery of land, such suit and claim is property sufficient to authorize administration on the estate; (3) Debts authorizing administration contemplates all such debts regardless of whether they have been paid by someone else out of funds not belonging to the estate. And (4) Administration should have been allowed in this case because grounds

therefor were shown by the uncontradicted evidence.

■ When a case is tried to the court, as was this one, findings of fact by the court are equivalent to a jury verdict. The general rule is that such findings will support a judgment if there is any evidence of probative value to support them. Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; Corn v. First Texas Joint Stock Land Bank, Tex.Civ.App., 131 S.W.2d 752, writ refused.

As we view the testimony in this case it is far from conclusive either way, but is conflicting in that it is fairly susceptible to more than one construction. Applicant contends that at the time of Dr. Lindley's death the expenses of his last illness, including hospital, nurses, funeral home and such items amounted to $1,205.70 and that she paid them out of her separate funds; and that there were three other items, $15 advanced by one of her attorneys for court costs in the district court case (time when advancement was made not shown), two automobile tires $41.62 and the expenses of another one of the attorneys who appears to have come to Fort Worth at the instance of Dr. Lindley to confer about the amounts of checks being sent to Dr. Lindley by his son. It is claimed that these three items were debts of the estate and were still unpaid at the time of trial.

We shall first notice those debts which applicant says she paid out of her separate funds. They consisted of the bills for hospitals, nurses and funeral home, all previously enumerated by us. Whether or not applicant paid those debts from her separate funds depends upon what constituted her separate money. She testified that at the time she was married to decedent she owned a small residence in San Angelo, and owned it at the time of trial; that the property had been rented part time since she was married, at $28 per month; the number of months it had been rented and the total amount received are not disclosed; that her daughter had lived in the house for the year preceding this trial, and it does not appear whether or not the daughter paid rents. She further testified that she had no other separate income and that she had received no gifts from any source. She also said that since her husband's death she had

been operating the tourist court "out there." We take this to mean that she referred to a tourist court on Fort Worth lands adjacent to the home place; that she received about $150 per month gross from such operations, but there was a great deal of expense incidental to it, but the amount of expenses is not shown. She further said she did not have sufficient outside income to cover her living expenses; that she did not spend very much of those funds for anything except "just groceries"; that she kept up her grocery bills and both places out of those receipts. Counsel for the respective parties put different interpretations upon this part of her testimony.

■ There were introduced in evidence by contestant several checks from him and his wife to his father, Dr. Lindley; three of which were during March, April and May, 1946, the last three months of the father's life; these three checks were for $402.50, $403.15, and $408 respectively. The May, 1946 check bore on its face the memorandum "For Dr. Lindley's expenses". Other checks in evidence were for varying amounts during 1945, slightly over $400 each, signed "Grande Courts, by J. T. Lindley" payable to the order of Mrs. J. T. Lindley; they were indorsed "Mrs. J. T. Lindley, pay only to Dr. R. H. Lindley" and further indorsed by "Dr. R. H. Lindley"; these checks bore memoranda "Living expenses". It is apparent that such bills as applicant paid, were paid from funds which came into her hands either from the rentals on her house above referred to or from the proceeds of the checks received by Dr. Lindley from his son, or both. It is equally certain that neither constituted her separate property. Her rentals were community, and the proceeds of Dr. Lindley's checks were either his separate property as a result of a gift from his son or if rentals under some private arrangement such proceeds would have been community property. Applicant said they received the checks from J. T. Lindley "fairly regularly". We need not decide the status of those funds. In any event the community funds would be liable for the community debts, and applicant would not be entitled to assert separate ownership to those funds until community debts were paid. It is argued by

applicant that Dr. Lindley gave to her those checks and that he had a legal right to do so, and we shall next notice this contention.

One of applicant's witnesses said he knew of the receipt by Dr. Lindley of those and other checks from his son and that deceased "depended" upon them (whatever that means). He said deceased would hand the checks to his wife and tell her to pay all living expenses and if there was any left over she could put in her own account and spend it for clothes or whatever she wanted. Another of applicant's witnesses who lived in the home said the checks were received by Dr. Lindley and were given to applicant to pay living expenses, that is what they were for. There is no testimony to indicate that there was ever any amount left on hand with applicant, after paying living expenses. Based upon the evidence mentioned, the trial court found against applicant's contention that she had paid the $1,200 or more debts out of her separate funds and found that the debts were paid out of the separate funds of deceased. The findings of the court in this respect may not be literally accurate but from all the testimony those funds were either his separate property or community and in either event would not have been her separate funds. In view of the fact the burden of proof was upon applicant to show that they were not paid out of the husband's separate funds or from community funds, we think that the findings by the court resulted in no harm to applicant.

The three small debts claimed by applicant to be unpaid, for expenses of the attorney in coming to Fort Worth to confer about why J. T. Lindley's checks were not larger (amount not shown); the $15 court costs advanced by another one of the attorneys in the district court case and the automobile tires, present the basis of another contention of applicant that there were unpaid debts of the estate authorizing administration. The trial court heard her version of those items, but the record discloses that every time either party approached that pending suit in district court, and the incidents concerning it, the court definitely ruled that he would not admit testimony going to its merits since it invol-

ved title to lands and he could not, sitting in an appeal from Probate Court, determine such matters. The petition in district court was read into evidence, to show the existence of the suit and its nature. There was a contract of employment of the attorneys in that case offered by applicant, but it does not appear in the record, since it was limited to show its date of March 28, 1946 and the parties to it. We have no means of knowing whether employment of counsel was upon a contingent basis nor what they obligated themselves to do relative to their personal expenses in connection with it. Applicant was asked on cross examination if the attorney whose expenses were claimed to be a debt against the estate was employed upon a contingent basis, and she answered: "He is involved in it." At any rate the effect of the court's fact finding in this respect was that the expense of the attorney was not a debt of deceased. To the same effect was his findings that the advancement of $15.00 court cost in the district court case by another attorney was not a debt against the estate. The item for automobile tires was held not to be a debt against the estate; the tires were ordered during the lifetime of deceased, to be delivered when the seller could procure them; they were received and delivered after the death of Dr. Lindley and placed on one of the automobiles which was "given, assigned, and relinquished" by the son and daughter of deceased to applicant, along with all personal property mentioned above. Obviously the trial court would not hold that the estate owed for the tires under the circumstances.

The record fairly discloses that the expense of the attorney claimed, grew out of the matter of the amounts of his checks received each month from the son and were not connected with the district court case, and even though that item was owing by the estate it constituted only one debt and insufficient of itself to require administration. Referable to the item of court cost and tires, we think the trial court properly disregarded them as debts against the estate.

The contention by applicant that the pending suit in district court was such prop-

erty right in this case as to authorize administration, is a most interesting one.

We have already observed that that suit involved a claim made by applicant as next friend for her husband and in her individual capacity as his wife against the husband's son, to cancel deeds of conveyance by the husband and father to the son made some years previously, and to recover the property for the estate. It is apparent that the interest applicant had or has in the property depends upon whether or not the conveyance was in fee simple, as it purported to be, or was it in trust for deceased. If it was the former she had no interest in it but if the latter, she would inherit a surviving wife's interest in the separate real estate of her husband. Of course, that suit involves the title and the trial court could not and did not attempt to pass upon it in any form. If the suit has merit, it is one between the heirs (surviving wife and son) of deceased. We know of no law to prevent her from continuing the prosecution of that suit in her "individual" right without administration on the estate. If, after its determination, it be found in her favor, she and the heirs will be joint owners in proportion to their rights under the law of descent and distribution, and can be handled and disposed of in either of several different ways. True, a condition could arise at that time that would authorize administration, but is contingent upon the conditions that may or may not come up.

Applicant relies upon the holding in Ragsdale v. Prather, Tex.Civ.App., 132 S.W.2d 625, writ refused, as authority for her contention that the pending suit in district court was such a property right as to support administration. Contestant relies upon Sanders v. Hart, Tex.Civ.App., 171 S.W.2d 531, writ refused want of merit, in support of the judgment appealed from. Both of the cited cases have some phases similar to the issue before us. But neither, we think, is directly in point and may be distinguished from the instant case. In the Ragsdale-Prather case, there were two valid claims against the estate affording grounds for administration if there was any estate upon which administration could operate. That condition does not exist in our case. The pending suit in the cited

case was between the heirs and a stranger to the estate, and a determination of it meant that one side "take all or nothing." It was held in that case that the property right involved was sufficient to administer upon; the court cited authorities in support of that holding which, in our judgment, do not strengthen the bare holding, yet it was approved by a sanction of the Supreme Court.

In the Sanders-Hart case (Tex.Civ. App., 171 S.W.2d 531) the entire controversy both in administration and a pending suit was between heirs of a decedent. One heir had been appointed administratrix and the remaining heirs procured a certiorari to review the appointment. The district court sitting in appeal of Probate found there were no debts and since decedent had conveyed the property involved in the pending lawsuit during her lifetime, there was no estate or property upon which to administer, and set aside the appointment of the administratrix. On appeal the action was upheld; the court in effect holding that the conveyance by the decedent passed the property out of her estate and the pending suit did not constitute "property" upon which administration could be had. As before observed, the controversy was between the heirs of the decedent. Court further observed that there was nothing to prevent the heir who had been appointed administratrix to prosecute the suit in her own name without the unnecessary expense incident to administration, and if recovery was had, the property could be partitioned as provided by law. Special cognizance was taken of the holding in Ragsdale v. Prather, supra, by the Court of Appeals. We think a very similar situation to some of those mentioned in the Sanders-Hart case are before us. If applicant in this case desires to continue the prosecution of the pending suit to establish her inheritable rights in the estate as against the other heirs she may do so without the necessity of administration. It is no excuse to say that the other heir or heirs against whom she may seek to recover should bear their proportionate part of the expense of a law suit to take from them the property which one or both of them claim. True Mrs. Crenshaw has not been made a party

**114**

to that suit, but there is nothing to prevent her intervening or being made a party. As for court costs that have been incurred and that may accrue, Rule 141, Texas Rules of Civil Procedure affords a means of apportionment. In view of the whole record we believe no error is shown by the points which we have discussed.

Fifth point of error relied upon by applicant asserts in effect that the judgment appealed from should be reversed and rendered because it deprives a surviving widow of the protection accorded her by law of having her rights protected and secured to her through the Probate Court.

■■■ Under this point it is urged that the widow (applicant), is entitled to have the Probate Court set aside to her out of the estate, a homestead or property in lieu thereof and other exemptions. This is quite true but it necessarily follows that before a court can do that there must be property of the estate out of which such allowances can be made. In the pending suit relied upon by applicant it is alleged by her that all the real estate of decedent is in the possession of and held by J. T. Lindley; this necessarily covers that portion situated in Tarrant County. The testimony shows that Dr. Lindley and his wife, the applicant, have resided upon and operated the small tourist camp on the Tarrant County property continuously since they married three years before his death; but there is nothing in the record to indicate why and by what authority they so occupied and used the property. We conclude that until such time as it is made to appear that there is property belonging to the estate out of which her statutory allowances can be made, she has suffered no wrong at the hands of the court for having failed to allow such claims. It cannot be said that the claims for allowances could be out of the personal property mentioned above because she has that in fee simple by virtue of the gift and relinquishment made by the son and daughter.

After much deliberation over this record we hold that no error is presented by the points raised and that the judgment of the trial court should be affirmed. It is so ordered.