305 P.2d 438

**In the Matter of the ESTATE of Taft JACOB, Deceased.**

**Abe T. JACOB, John E. Jacob, George T. Jacob, and Mike Jacob, Appellants,**

**v.**

**Victor H. ARIDA, Administrator of the Estate of Taft Jacob, Deceased, Appellee.**

**No. 6116.**

Supreme Court of Arizona.

Dec. 28, 1956.

Hall, Catlin & Malloy, and Russell E. Jones, Tucson, for appellants.

Cusick, Watkins & Frey, Tucson, for appellee.

UDALL, Justice.

The question presented by this appeal is whether, under the agreed statement of facts, the trial court committed reversible error in denying a petition to revoke the letters of administration theretofore issued to appellee, Victor H. Arida, for administration of the estate of Taft Jacob, deceased. It is asserted administration was no longer necessary as there were no creditors of said estate and no assets therein.

The matter is presented to us upon an agreed "Statement Of The Case" which bears the approval of the presiding judge pursuant to Rule 76, Rules of Civil Procedure; hence, the facts are nowise in dispute. Succinctly stated in chronological order the record shows the following: Taft Jacob and his wife Mary Jacob had been residents of Tucson, Pima County, Arizona, for many years, and they had accumulated an estate consisting of both real and personal property. On July 11, 1946, Taft Jacob gave a power of attorney to his eldest son, Abe T. Jacob. The latter—apparently acting under this power of attorney—immediately proceeded to transfer, or purportedly transfer, all of Taft Jacob's property to various members of the latter's family, viz.: to Mary Jacob, wife, Abe T. Jacob, son, and S. A. Jacob, a brother. All of this property was community property of Taft Jacob and Mary Jacob, his wife.

Taft Jacob died intestate on July 21, 1946. He left surviving him his wife and seven children, namely: Abe T., John E., George T., 20 years, Mike, 15 years, James, 12 years, Richard, 7 years, and Rose Mary, 19 years. It will be noted that at his death all of his children, except Abe T. and John E., were minors. No steps were taken to probate the estate of Taft Jacob at that time.

On April 23, 1952, the surviving spouse, Mary Jacob, and Abe T. Jacob, John E. Jacob and wife, and George T. Jacob and wife, entered into a family settlement agreement, the details of which it is not necessary to set forth.

It was not until November 21, 1952 (6 years and 4 months after decedent's death), that the surviving spouse, Mary Jacob, filed in the superior court a petition for letters of administration. This petition was in the usual form, alleging the jurisdictional facts together with an allegation that decedent left an estate in Pima County consisting of real and personal property having

a valuation of $110,000. Prior to a hearing on this application, Abe T., John E. and George T. Jacob, three of the heirs at law of decedent, filed a motion to dismiss and an objection to the petition for letters of administration, upon the grounds that the property described in the petition did not belong to the estate, that the estate did not own any property, and that there were no creditors of said estate.

When said petition came on for hearing it was stipulated by all of the interested parties that the court might enter an order appointing petitioner administratrix of the estate providing that such order reserved to said heirs the right to contest the validity of the administration of said estate. On December 8, 1952, letters of administration were issued to the widow, Mary Jacob, the order of appointment containing the proviso that the granting of said petition did not in any manner determine nor affect the ownership of the property set forth therein. Ten days later the three older heirs—now joined by their brother Mike— stipulated that Victor H. Arida, the nominee of the surviving spouse, could be substituted as administrator in place of their mother, Mary Jacob. The court entered an order on December 18, 1952, authorizing the substitution under the same conditions heretofore set forth and letters of administration were issued to Victor H. Arida on December 22, 1952.

On December 19, 1952, the court appointed Abe T. Jacob as guardian ad litem of James and Richard Jacob, minors, and on January 8, 1953, the court also appointed Abe T. Jacob as guardian ad litem of his sister, Rose Mary Jacob, an incompetent.

Pursuant to court order Administrator Arida gave notice to creditors and proof of publication was made. No creditors' claims were filed within the statutory period. The administrator filed a purported inventory and appraisement in the estate proceeding on November 5, 1954, listing the property that all agree belonged to decedent prior to execution of the power of attorney.

On December 23, 1953, Administrator Arida filed a civil action in the superior court (No. 42194 Pima County) against the adult sons, Abe T., John E., George T., and Mike Jacob, and against S. A. Jacob, a brother of decedent, and Abe T. Jacob as guardian of his minor brothers James and Richard Jacob and of the incompetent sister, Rose Mary Jacob, demanding judgment against said defendants for the value of the property which the administrator claimed belonged to the Taft Jacob estate. It is alleged in the complaint that said power of attorney was illegally exercised by Abe T. Jacob and that the family settlement agreement is invalid.

On January 12, 1955, Abe T. Jacob, for himself and on behalf of all of the other heirs of decedent, filed a verified petition

for revocation of letters of administration upon the grounds that there were no creditors of the estate; hence, the court either lacked jurisdiction to enter its order appointing the administrator, or it lost jurisdiction to continue administration of said estate due to the absence of creditors and that it is unnecessary that the estate be further administered. An order to show cause why said letters should not be revoked was issued.

At the time the matter was presented to the court, the adminstrator filed an affidavit of heir James Jacob in which the latter stated: he had just reached the age of majority and had not received any of the corpus of the estate of his deceased father; no one was appointed his legal guardian during his minority; he repudiated the family settlement agreement entered into on April 23, 1952; and, further, he demanded that the administrator continue with the administration of said estate in order that there might be an accounting of the rents, issues, profits and corpus of his deceased father's estate and that he might receive his proportionate share therefrom.

The four brothers, Abe T., John E., George T., and Mike Jacob, filed a counter affidavit with the court, in which they assert that their brother James had authorized them to represent him in all matters pertaining to all pending litigation and that he had consented to the answer filed in the foregoing civil action. Furthermore, they give their version of the family settlement agreement and avow that the affiants have always considered that they held all of said property in trust for all of their brothers and sister and that each of the children had a one-seventh interest in said property.

The matter was then submitted to the court without further proof and it was stipulated that as there were no disputed questions of fact, the court should determine the matter as purely a question of law. Whereupon the court entered an order denying the petition for revocation of letters of administration. This appeal followed.

The appellants present four assignments of error that really raise but the one question, i. e., whether upon this record the refusal of the trial court to terminate the further administration of this estate constitutes reversible error. Supporting propositions of law, to be discussed hereafter, were also presented.

█ The agreed statement of facts on file herein indubitably shows, and the trial court must necessarily have found, the following: 1. Mary Jacob was the surviving widow; and the seven children heretofore named are all of the heirs of decedent Taft Jacob and Mary Jacob, his wife, and that there are no other heirs of decedent; 2. there is no dispute as to the nature and extent of the property which decedent Taft Jacob owned prior to his

death and at the time of his execution of said power of attorney to Abe T. Jacob, or, if said power of attorney was invalidly exercised, the property owned at the time of his death; 3. certainly at the time petition to revoke appellee Arida's letters of administration was filed there were no creditors of said estate. This fact is established beyond peradventure by the following: (a) the petition for letters of administration is barren of an allegation that there were any creditors, (b) a presumption that no debts exist against the estate where such a long time had elapsed before letters of administration were applied for, see, Faulkner v. Faulkner, 23 Ariz. 313, 203 P. 560, and (c) the fact notice to creditors was regularly given and no claims presented within the statutory period. 4. All federal and state taxes of the decedent and the estate had been paid in full prior to the court's denial of the petition for revocation.

At the outset it should be made clear that in deciding the question raised by this appeal it is wholly unnecessary and would be manifestly improper for us to determine (a) whether the power of attorney given by decedent to his son Abe T. Jacob was validly exercised, or (b) the validity of what is termed the family agreement, this for the reason that a superior court, sitting in probate, has no jurisdiction or authority to determine such issues. Moore v. Brandenberg, 248 Ill. 232, 93 N.E. 733, 736; Bancroft's Probate Practice, 2d Ed., Vol. 1, section 27.

We will now consider the respective positions of the parties. The contentions of appellee to sustain the ruling of the lower court would appear to be somewhat as follows: (1) administration is necessary where the decedent leaves an infant or infants as next of kin or heirs who do not have legal capacity to agree to a distribution; (2) administration is necessary where the heirs' attempt to agree to distribution fails or where settlement out of court is challenged for fraud; (3) the probate court has power to appoint an administrator though there is but one heir and there are no unsecured debts; and (4) necessity for administration should be determined by the probate court in exercise of its discretion.

Appellee cites various cases in support of his contentions. Among them are In re Strong's Estate, 119 Cal. 663, 51 P. 1078, wherein it is stated that nothing exempts property from administration; California does not recognize family settlements, for instance. And Oregon would apparently accept appellee's argument; see, Hadley v. Hadley, 73 Or. 179, 144 P. 80. Other respectable authority can be found to sustain appellee's position that even under the facts presented here, administration of decedent's estate should continue. But there is a sharp division in the reported cases on the question.

294

Appellants urge the following propositions in support of their basic premise that administration, with its accompanying expense, is wholly unnecessary and improper: (a) there is no necessity of administration when there are neither creditors of, nor assets in, an estate; (b) administration is not necessary when its sole purpose is distribution of the estate to those entitled thereto under laws of descent and distribution; (c) a long lapse of time after an intestate's death without administration raises a presumption against the necessity for administration; (d) the widow and any dissatisfied heirs are not remediless as they may be substituted in the suit filed by the administrator (number 42194, supra), or they may directly institute an action for recovery of assets assertedly belonging to the estate without the necessity of administration; and (e) the trial court lost jurisdiction to continue, or erred as a matter of law in continuing, the administration of said estate when it became firmly established that there was no necessity for such administration because there were no creditors.

■ Of course, if administration under all conditions is essential appellee should prevail. But such is not the law in Arizona, for when conditions warrant, we recognize family settlements as favorites of the law, thereby avoiding administration (Cf. Bancroft's Probate Practice, 2d ed., Vol. 1, section 8). This principle was enunciated in Faulkner v. Faulkner, supra, from which we can also glean that an heir cannot as a matter of right demand administration of an estate. This does not, however, support appellant's proposition of a lack of jurisdiction in the lower court, as necessary jurisdictional facts are too patent in the record to warrant giving it serious consideration.

■ The reasons why administration was sought must be considered in determining if the lower court's action constituted an error of law. Obviously the main purpose was to permit the administrator's filing of the civil action challenging validity of the exercise of power of attorney by Abe Jacob. If successful in his efforts, the administrator's only duty would be to ask the court to distribute the assets so recovered. His position is then most analogous to that of a trustee of a dry or naked trust under which he has no duty other than to convey to the cestui. See, Fretwell v. McLemore, 52 Ala. 124, 133, and Smith, Survey of Trusts, section 13, p. 97. Appellants persuasively contend that if the same end could be attained through a civil action by any heir, the lower court committed reversible error in sanctioning a continuation of the administration. To sustain these propositions, appellants have cited respectable authority which we believe to be both better reasoned and more consonant with previous decisions of this court than those cases relied upon by appellee.

■ A right in the heirs to maintain an action to set aside allegedly fraudulent conveyances of realty, title to which vests directly in the heirs, has been more readily accepted by some courts than a similar right with respect to personalty, see, Neelen v. Holzhauer, 193 Wis. 196, 214 N.W. 497, 499, 53 A.L.R. 359, for in many jurisdictions, as in ours, title to personal property vests in the administrator upon death. In a Texas case strikingly similar to that under consideration here, the court squarely met that precise issue; Sanders v. Hart, Tex.Civ.App., 171 S.W.2d 531. There an administratrix sought to recover livestock and real estate of an intestate though there were no debts and though decedent had purportedly conveyed the property during her lifetime. The court stated that "under the circumstances the heir, as such, may bring a suit in the District Court to cancel his ancestor's conveyances and partition the property." Also see, Lindley v. Lindley, Tex.Civ.App., 201 S.W.2d 108; Cf. In re Plogstert's Estate, 350 Pa. 474, 39 A.2d 605, 606, and Nickel v. Vogel, 76 Kan. 625, 92 P. 1105, 1108. In Pourier v. McKinzie, C. C., 147 F. 287, 290, the court permitted a fund accruing to decedent to be paid directly to an heir, stating it would be needless to pay her through an administrator, whose fees would only diminish the share due her.

■ In Moore v. Brandenberg, supra, is an expression of the law we deem controlling under these specific circumstances:

"* * * Although the authorities are not in entire harmony, the weight of them is that it is unnecessary to go through the legal form of having an administrator appointed for the sole purpose of distributing the personal estate, but the heirs may maintain necessary actions for the purpose of reducing property to possession in order that it may be distributed." 93 N.E. at page 735; followed in Weiland v. Weiland, 297 Ill.App. 239, 17 N.E.2d 625, 627.

In an annotation beginning at page 389 in 70 A.L.R., many cases are cited in support of the above statement made by the Illinois court.

We consider adoption of the principle enunciated in the Moore case, supra, to be a normal, logical progression from the legal principles announced in several earlier Arizona cases. We have not heretofore ruled on a case precisely in point; however, in Faulkner v. Faulkner, supra, 23 Ariz. at page 316, 203 P. at page 561, it was stated that "* * * where there are no creditors one of the considerations for the appointment of the administrator disappears." Also, in the case of In re Wilson's Estate, 19 Ariz. 205, 207, 168 P. 503, 504, wherein

one petitioned for letters of administration to distribute newly discovered community property of an intestate, it was stated:

"* * * No community debts appearing, administration would be a useless as well as an expensive proceeding. The property * * * should not be required to defray the expenses of administration which could not in any way strengthen * * * title. It would be a useless and unnecessary burden that the law will not permit. The question here sought to be settled and determined should have been addressed to another court having jurisdiction to determine controversies involving title to real property."

The modern trend indicated in the cases cited by appellant harmonizes with the Faulkner and Wilson cases; other Arizona cases of like tenor are the following: In re Anderson's Estate, 18 Ariz. 266, 158 P. 457; In re Monaghan's Estate, 71 Ariz. 334, 227 P.2d 227; Nowland v. Vinyard, 43 Ariz. 27, 29 P.2d 139; Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459, 29 A.L.R.2d 518; Roberson v. Teel, 35 Ariz. 166, 275 P. 2.

We are convinced, as a matter of law, that continuance of administration of the estate of Taft Jacob was and is unnecessary; hence, refusal of the trial court to revoke the letters of administration was an improvident act. The end result can only be diminution of the estate to the extent of unnecessary administration fees and costs. Therefore, we hold the action of the trial court was an error of law warranting reversal.

The order appealed from is set aside with directions to grant the petition to revoke letters of administration theretofore issued to Victor H. Arida.

Reversed with directions.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.