416 P.2d 436

James E. MACK, Administrator of the Estate of Lena L. Thornton, deceased, Harry Baker, George Baker, Ora Baker Brockway, Lena Baker Toedt and Everett Baker, Appellants,

v.

M. C. AUGUSTINE and Margaret G. Augustine, his wife, H. S. Lauer and Barbara Lauer, his wife, and Phoenix Title & Trust Company, a corporation, Appellees.

No. I CA–CIV 183.

Court of Appeals of Arizona.

June 30, 1966.

D. Kelly Turner, Scottsdale, for appellants.

Duane Wyles, Phoenix, Stockton & Hing by Henderson Stockton, Phoenix, Charles A. Stanecker, Phoenix, for appellees.

STEVENS, Chief Judge.

This is an appeal from a summary judgment in favor of the defendants-appellees, against the plaintiffs-appellants, the ancillary administrator and heirs of the estate of Mrs. Lena L. Thornton, in an action for recision and fraud concerning the sale of 160 acres of desert land. The motion

for summary judgment raised law defenses and also raised the issue as to the sufficiency of the record to establish two claims for relief. An examination of the files leaves considerable doubt in the minds of this Court that the record is sufficient to defeat the motion for summary judgment in relation to the issue of recision and in relation to the issue of fraud. We are not called upon to make this determination, it being our opinion that the cause may be determined on other legal issues. It is essential to the proper determination of this matter that a chronology be established.

On 22 December 1955, Mrs. Thornton died intestate in San Diego, California, leaving an estate in California and 160 acres of desert land near Phoenix. It is the desert land which is the subject matter of the controversy before us. Mrs. Thornton was survived by her brothers, Harry Baker and George Baker and her nieces Ora Baker Brockway and Lena Baker Toedt as well as her nephew, Everett Baker. All of the heirs at law were residents of Iowa.

Early in January 1956, Harry Baker and his son journeyed to San Diego in relation to the estate and then to Phoenix to inspect the land. Through Mrs. Alkire, a friend of Mrs. Thornton, they became acquainted with the defendant Augustine, a real estate broker. Augustine knew of the property and the Bakers, as well as Augustine and Mrs. Alkire, drove to and visually inspected the property. Augustine offered $100 per acre. On 27 January 1956, a California administrator of the estate of Mrs. Thornton was appointed and qualified.

In April 1956, Augustine and his attorney traveled to Iowa. They met with the heirs one evening and with the heirs and their attorney the following morning. On this last date a purchase agreement was executed wherein the defendants Augustine and Lauer were the buyers and first parties and the five heirs were the sellers and second parties. The agreement recited a consideration of $16,000 which was in fact paid on that date and further recited:

"5. It is further understood and agreed that in the event that the net value of the Estate of said Lena L. Thornton being probated in the County of San Diego, State of California, shall exceed the sum of $37,000.00 and that by adding the sale price of $16,000.00 for the subject real property of this agreement and any other property of any kind and description hereinafter discovered which would cause the net value of the Estate of the said Lena L. Thornton to be subject to a federal or state inheritance tax, that second parties shall pay the same."

The heirs executed deeds which were shortly thereafter recorded in Arizona.

On 2 May 1956, the five heirs employed counsel in Iowa to instigate an Arizona action based upon fraud in connection with the sale. On 10 May through the services of Phoenix counsel, not counsel in the case now before us, a fraud action was filed in the United States District Court in and for the District of Arizona wherein the five heirs were the plaintiffs and Augustine and Lauer, together with their respective wives and the attorney who traveled with Augustine to Iowa, were named as defendants.

On the 29th of October of that year a letter was written on behalf of Harry Baker to the attorney who accompanied Augustine to Iowa which letter stated that Harry Baker and his brother George Baker were satisfied with the transaction and that they were not going to prosecute the federal court action. Some time thereafter the federal court action was dismissed without prejudice, the exact date not being reflected in the file.

On 26 December 1956, one Brown was appointed Special Administrator of the Estate of Mrs. Thornton in a probate cause in Maricopa County and on the same day a two count complaint was filed in the Superior Court naming as parties defendants Augustine and Lauer and their wives. The first claim for relief asserted that the es-

tate became liable to the State of Arizona and to the Federal Government for estate taxes, that the administrator was entitled to the possession of the property for the purposes of administration and was entitled to recover title to the property so that it could be sold, with a prayer:

> "* * * that the estate of LENA L. THORNTON, deceased, be decreed the owner of said land and entitled to possession thereof, that the deed to the defendants be ordered cancelled, and that it be decreed that the defendants have no estate or interest therein except as to their entitlement to a lien in the amount of the purchase price paid until such time as said amount as determined by the Court is refunded to said defendants, for plaintiff's costs incurred herein, * *."

The second claim for relief was one for fraud in connection with the transfer by the heirs with the following prayer:

> "WHEREFORE, plaintiff prays judgment voiding, setting aside, and holding for naught the deed and contract hereinbefore described and quieting plaintiff's title as Administrator of the estate of LENA L. THORNTON, deceased, in and to the real property hereinbefore described, subject to such lien as the Court shall impose in the exercise of its judicial discretion; * * *."

While the allegations of fraud are not identical with those set forth in the federal court action, the key allegations are substantially identical. On the same date, pursuant to Section 12–1191 A.R.S.[1], a notice of lis pendens was filed in the Office of the County Recorder. The face of the complaint of record in the Office of the Clerk of the Superior Court does not reflect the issuance of a summons. The official file received by this Court does not reflect that a summons was issued as of the date that the complaint was filed or in relation to the original complaint. The record reflects that this complaint was never served upon the defendants.

Even though the complaint was not served, the file which is presented to this Court reflects that there were some settlement negotiations and further reflects that on 13 March 1958, the attorney for the plaintiff—special administrator, wrote to the defendant Lauer stating among other things:

> "* * * It is our opinion that the land purchased by you is subject to debts, taxes, and costs of administration. The purpose of the land recovery suit is to obtain funds to meet these obligations of the estate in Arizona". It was suggested that there be discussion "* * * Otherwise we have no alternative but to proceed with action on the recovery suit."

On 19 September 1958, an amended complaint was filed. The original thereof forwarded to this Court from the Office of the Clerk bears a notation indicating that a summons was then issued. There is a summons in the file issued on that date with a return of service showing service of process upon the Augustines and the Lauers. In this amended complaint Brown still continues in his capacity as Special Administrator. The amended complaint recites Mrs. Thornton's death, that she owned the land in Arizona prior to her death, the conveyance by the heirs, that the property was conveyed subject to the debts of the decedent and costs of administration, that the estate cannot be closed until state and federal estate taxes and expenses of administration have been paid, and there was an allegation and prayer for $6,726.11. The prayer further requested that a lien be placed against the property as of the date

---

1. Section 12–1191 A.R.S. A. In an action affecting title to real property, plaintiff at the time of filing the complaint, * * * may file in the office of the recorder of the county in which the property is situated a notice of the pendency of the action or defense. The notice shall contain * * * a description of the property affected. B. The recorder shall file the notice and record and index it in the names of the parties to the action, and thereafter a purchaser or incumbrancer of the property affected shall be held to have constructive notice of the pendency of the action and the claims therein made.

of the death of Mrs. Thornton together with a foreclosure of that lien. The original complaint was not verified. The amended complaint was verified by the Special Administrator. The amended complaint did not continue or carry forward the first claim for relief in the initial complaint which sought the cancellation of the deeds which had been given by the heirs or the second claim for relief in the original complaint alleging fraud. The file reflects that by mutual agreement, even though the amended complaint had been properly served, no answer was required and no default was entered.

The next official activity which has been called to the attention of this Court is that during the month of July 1960, James E. Mack was granted ancillary letters of administration in the matter of the estate of Mrs. Thornton in and for the County of Maricopa.

Thereafter and on 17 August 1960, at the insistence of the attorneys for the plaintiff, the trial court by a judge other than the judge whose orders are now under review, entered ex parte orders. Mack in his capacity as administrator was substituted as plaintiff for Brown in his capacity as special administrator. The amended complaint was stricken and the original complaint was restored. Additional parties defendants were added, being persons who had acquired an interest in the land in question. The heirs were joined as intervenors with Mack's consent. The intervenors adopted the original and the supplemental complaint. The Phoenix Title & Trust Company was joined as a defendant. In taking the action above outlined, the trial court made a finding:

"* * * that none of the defendant above named would in any way be prejudiced by the striking of the Amended Complaint and the restoration of the original Complaint * * *" and further reciting that since the defendants had failed to answer or otherwise plead "* * * said defendants have waived any right to raise the issue of abatement of either the original or Amended Complaint * * *."

Proper service of these pleadings was accomplished, the file reflecting the issuance of the alias summons. The file reflects that the plaintiff granted an indefinite extension of time to all parties defendant named in the supplemental complaint who were joined by reason of their having acquired interests in portions of the land in question.

Extensive depositions of the heirs were taken in Iowa on the 21st of October of 1960, Mrs. Brockway testifying with reference to Uncle George Baker:

"* * * he died two weeks ago * *." No effort was made to substitute a personal representative for Mr. Baker.

In December 1964, this cause was set for trial the 8th day of February 1965, and the court directed that on the 28th day of January 1965, the court would consider any and all motions which could be filed on or before a specified date. Numerous motions, including the motion for summary judgment which is now before us, were filed and on said date were argued. There is a reporter's transcript of the argument. The court granted the motion for summary judgment and the record does not disclose a ruling on the other motions.

Mr. Turner, the attorney for the appellants, is without the continental limits of the United States in government service and was not able to be present at the oral argument. At the time of the oral argument the Court recognized Mr. Mack. It was urged by Mr. Mack that the question as to the capacity of an administrator to file the original complaint was not presented to the trial court at the time of the presentation of the motion for summary judgment and, therefore, was a matter which could not be considered by this Court on appeal. The reporter's transcript of the argument and the memoranda which the attorneys submitted in relation to the motion for summary judgment discloses that this question of authority was presented to the trial court. The opening

brief of the appellants does not raise the issue. On the contrary this brief affirmatively urges the legal capacity of the fiduciary to bring an action of the nature here in question. It is our opinion that the authority of the fiduciary is a matter which is appropriate for our consideration.

■ The authority of a special administrator is limited. In Re Estate of Pitt, 1 Ariz.App. 533, 405 P.2d 471 (1965). The statutory law relative to Special Administrators is found in Sections 14–441 to 14–444 A.R.S. and a reading thereof impresses this Court that it is contemplated that the period of the service of a special administrator be of short duration. For example, Subsection A of Section 14–442 states in part:

" * * * No appeal may be taken from the order of appointment"

whereas, an appeal will lie from the granting or the refusal to grant an order of appointment in relation to a general administrator as provided in Subsection J, par. 1, of Section 12–2101 A.R.S.

■ No issue is raised relative to the long period of the existence of the letters of special administration and the long period thereof is not a determining factor in this opinion. In the absence of unusual or extraordinary circumstance, this Court does not look with favor upon an extended period of service by a special administrator.

■ The powers of a special administrator are set forth in Section 14–443 A.R.S. which section reads as follows:

"A. The special administrator shall collect and preserve for the executor or administrator the personal property of decedent, take charge and management of, enter upon and preserve from damage, waste and injury, the real property, and for such purposes may commence and maintain, or defend, actions and proceedings as an administrator.

"B. The special administrator may sell any perishable property the court may order sold, and exercise such other powers as are conferred upon him by

his appointment, but he is not liable in an action by a creditor on a claim against decedent."

The powers of an administrator are reflected in the following sections:

"§ 14–472.

"A. The executor or administrator shall take possession of all the estate of decedent, real and personal, and collect all debts due decedent or the estate.

"B. For the purpose of bringing actions to quiet title or for partition of the estate, possession of the executor or administrator is the possession of the heirs, legatees or devisees, but the possession by heirs, legatees or devisees is subject to possession of the executor or administrator for the purpose of administration."

"§ 14–475.

"A. When there is a deficiency of assets in custody of an executor or administrator, *and decedent in his lifetime has conveyed or transferred property,* or any rights or interests therein, with intent to defraud creditors, or to avoid a right, debt or duty of any person, *or has conveyed or transferred the property* so that the conveyance or transfer by law is void as against creditors, the executor or administrator shall commence and prosecute an action for the recovery of the property for the benefit of the creditors, and shall recover property which has been so conveyed or transferred, whatever may have been the manner of the conveyance or transfer.

"B. The executor or administrator is not bound to bring the action unless the creditors pay such part of the costs and expenses of the action, or give such surety to the executor or administrator therefor as the court on application by the creditors may direct.

"C. The property recovered shall be subject to payment of the debts of decedent as other property in custody of the executor or administrator." (Emphasis supplied.)

The Rules of Civil Procedure, 16 A.R.S., also discuss the powers of a probate fiduciary. In part, Rule 17 is as follows:

"RULE 17. Parties plaintiff and defendant; capacity

"17(a) Real party in interest. Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. When a statute of the state so provides, an action for the use or benefit of another shall be brought in the name of the state.

"17(b) Actions by personal representatives; setting aside judgment. *Actions* for the recovery of personal property, debts or damages, and *for the title to or possession of lands,* or for any right attached thereto or arising therefrom, or for an injury or damage thereto *may be commenced by an* executor, *administrator,* or guardian appointed in this state *in the same manner as if commenced by the* testator or *intestate,* and judgment therein shall be as conclusive as if rendered in favor of or against the testator or intestate. The judgment may be set aside upon the application of any person interested for fraud or collusion on the part of the executor, administrator or guardian.

"17(c) *Actions by* or against *personal representatives. Actions for the recovery* or possession *of property, real* or personal, or to quiet title thereto, or to determine an adverse claim thereto, and all actions founded upon contracts, *may be maintained by* or against *an* executor or *administrator in all cases in which such actions might have been maintained by or against his testator or intestate."* (Emphasis supplied.)

From the foregoing it is apparent that under the circumstances of the case before us the probate fiduciary did not have the legal capacity to sue claiming relief of the nature set forth in the original complaint.

Upon the death of Mrs. Thornton, the title of the Arizona real property immediately vested in her heirs at law. In re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238 (1947). So long as the title remained in the heirs at law there was a statutory power in the probate fiduciary to sell all or a part of the real property should such sale be necessary in connection with the payment of creditor's claims, estate taxes and expenses of administration. Stephens v. Comstock-Dexter Mines, Inc., 54 Ariz. 519, 97 P.2d 202 (1939). Arizona encourages heirs to settle estates without probate. Faulkner v. Faulkner, 23 Ariz. 313, 203 P. 560 (1922); In Re Jacob's Estate, 81 Ariz. 288, 305 P.2d 438 (1956). In the event that real property which the decedent owned at the time of the death was thereafter conveyed by the heirs and the real property or its equivalent value was needed to pay the debts, taxes and other estate obligations, it could well be that a personal liability arises on the part of the heirs who conveyed the title and on the part of those who purchased without the protection of a probate sale, an obligation enforcible by the probate fiduciary but this right of recovery does not vest in the probate fiduciary the right to recapture the title. Roberson v. Teel, 35 Ariz. 166, 275 P. 2 (1929). We are not here called upon to interpret the quoted portion of the contract entered into at the time of the sale by the heirs, nor the soundness of the legal position urged by the amended complaint. In the situation which is presented to us, if there was a claim for relief either in recision or in fraud, that claim lay not in the estate of Mrs. Thornton but in the heirs. Rule 17(c) Rules of Civil Procedure.

The record affirmatively discloses that the heirs discovered the claimed fraud no later than the 2nd day of May 1956 on which date they employed their Iowa attorney to institute the action which was

filed a few days later in the United States District Court in Phoenix. The statute of limitations in relation to fraud is set forth in A.R.S. Section 12–543. The pertinent portions of this section are as follows:

"There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:

\* \* \* \* \* \*

"3. For relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

There is also a four year statute of limitations being Section 12–550 which reads as follows:

"Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward."

The Arizona Supreme Court recently considered the phrase "commenced and prosecuted" in the case of Baca v. Bank of America, National Trust and Savings Association, 99 Ariz. 352, 409 P.2d 52 (1965). Therein it is pointed out the mere delay in prosecution can result in the loss of the right to proceed.

Rule 6(f) of the Rules of Civil Procedure is as follows:

"An action shall abate if the summons is not issued and served, or the service by publication commenced within one year from the filing of the complaint."

It is interesting to note, but of no controlling interest in this case, that the Uniform Rules of Practice which were adopted by the Arizona Supreme Court effective 1 January 1962, and found in Volume 17 A.R.S. contain rules designed to bring about the dismissal of actions which are not diligently prosecuted.

■■■ It is urged that the 17 August 1960 ex parte order of the trial court made a determination binding upon all of the appellees, namely, that they are not injured by and could not attack the "reinstatement" of the original complaint. In our opinion, it is of great moment that the original complaint had never been served. The amended complaint claimed relief not within the original complaint and with the filing of the amended complaint, the claims for relief which were set forth in the original complaint were abandoned. The trial court did not have the power by its ex parte order to preclude an attack upon the failure to prosecute the original complaint or to urge the abatement thereof. While it is true that the provisions of Rule 6(f) are not self-executing and that the protection afforded by this rule is waived by the failure to urge the applicability of the rule, McCullough v. Western Land and Cattle Company, 27 Ariz. 154, 231 P. 618 (1924), this argument might be applicable in relation to the 19 September 1958 amended complaint since that pleading was served and a considerable period of time expired without an answer. If it be that Rule 6(f) was waived in relation to the amended complaint, it cannot be properly urged that the same waiver applies to the original complaint together with its amendments and supplements, wherein entirely different claims for relief were urged and in relation to which there had been no prior service of process. A party litigant by inactivity does not waive the protection of a rule until that party has been served.

■■■ Even though it be established that Augustine and Lauer knew that the original complaint was filed, they had no obligations thereunder until they were properly served with process for knowledge and legal notice are not identical. Stinson v. Johnson, 3 Ariz.App. 320, 414 P.2d 169 (1966). The recording of the lis pendens is of no legal consequence insofar as it effects the liability of Augustine and Lauer. Under the statute, a lis pendens is prospective in its action and is notice to those who thereafter acquire an interest. The notice is of no greater consequence

than is the validity of the action to which the notice of lis pendens refers. The obligations and liabilities of the appellee Phoenix Title & Trust Company are no greater than those of Augustine and Lauer from whom its obligations and privileges stem.

We are not called upon to rule as to the defenses of estoppel and laches which were also presented in the motion for summary judgment. It is our opinion that the defense of the statute of limitations is well founded, that it can be established by motion for summary judgment and that even though there be disputed questions of fact, the record clearly establishes in the language of Rule 56(c) as amended, "that the moving party is entitled to a judgment as a matter of law".

The judgment is affirmed.

CAMERON and DONOFRIO, JJ., concur.