[Civil No. 1829.   Filed January 10, 1921.]

[194 Pac. 333.]

In the Matter of the Estate of JOHN G. BAXTER, Deceased. MICHAEL IRISH, Appellant, v. PHIL C. BRANNEN, Administrator of the Estate of JOHN G. BAXTER, Deceased, Appellee.

1. EXECUTORS AND ADMINISTRATORS—CLAIM ON CONTRACT SHOULD BE FILED AND ACTION BROUGHT IN CASE OF DISALLOWANCE.—Where an estate was indebted on a contract made by decedent, the only way to make the debt a legal charge against the estate was by filing with the administrator for allowance a verified claim within the time fixed by Civil Code of 1913, paragraphs 882, 883, and, in case of its disallowance by the administrator or the judge, to institute a civil action in the proper court under paragraph 887.

2. EXECUTORS AND ADMINISTRATORS—CLAIMANT OF TRUST FUND MAY PRESENT THE MATTER AS A CLAIM OR PROCEED IN EQUITY.—Where decedent, as the agent of a co-owner of a mine, had come into possession of certain moneys belonging to such co-owner out of the sale of the mine, held that, although such moneys constituted

a trust fund and were not a part of decedent's estate, the co-owner, at his option, might have regarded decedent's and his administrator's conduct in connection therewith as a conversion of the funds, and filed a claim against the estate as for debt, and upon its disallowance brought a civil action in the proper court to establish his claim, or he could have instituted a suit on the equity side of the court for the purpose of having the personal representative declared his trustee of such fund, in which case there would have been no necessity formally to present it as a claim against the estate.

3. PARTNERSHIP—PROBATE COURT CANNOT ENTERTAIN SUIT FOR PARTNERSHIP ACCOUNTING.—Under Civil Code of 1913, paragraph 970, as to rights of surviving partner to continue in possession of the partnership, accounting to the administrator of the deceased partner, the superior court, exercising probate jurisdiction, cannot entertain an action for partnership accounting.

4. APPEAL AND ERROR—COURTS—JURISDICTION OF SUBJECT MATTER CANNOT BE WAIVED.—Jurisdiction of the subject matter cannot be waived, as by all parties' acquiescence in the proceedings had, and the question of the court's jurisdiction over the subject matter may be raised at any time, as on appeal for the first time.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Order appealed from vacated and set aside for want of jurisdiction to enter it.

### STATEMENT OF FACTS.

This case was carried on in the lower court as a probate proceeding, and arose out of a dispute over the ownership and division of certain moneys realized out of the Minnie mining claim, situate in Pima county, Arizona. E. G. Bush, John G. Baxter, and Michael Irish were, on August 10, 1916, and for some time prior thereto, co-owners respectively, of one-half, two-sixths, and one-sixth of said mining claim. On that date Baxter died intestate, and thereafter, on September 6, 1916, Phil C. Brannen was appointed and qualified as administrator of his estate. During the time these parties were such co-owners, ores were extracted from said mine and disposed of, which,

together with the sum realized on account of an
optional contract of sale of the mine, amounted to
$228,625.93 after deducting all expenses.   Of this sum
one-half, or $114,312.97, it is conceded, rightfully be-
longed to Bush on the basis of his one-half ownership
and an understanding between the owners of the
mine, and is therefore not in any way involved in
this controversy.   The other one-half was divided or
distributed, $95,535.99 to Baxter and his personal
representative, and $18,776.97 to Irish.   The latter
now contends he was entitled to one-sixth of the total
sum realized from the mine, or $38,104.31, and that
Brannen, as administrator, has in his possession
$19,327.34 belonging to him.   Irish, for many years
a resident of Pima county and owner of mining
stocks and mining claims, in 1907 gave to Baxter
a power of attorney, authorizing the latter "to sell,
assign, or transfer any or all of his mining stock
or mining interests wherever situate in Arizona,"
and thereafter left Arizona for Ireland, where he
continuously resided up to the date of this litigation.
For about one year from June, 1914, to July, 1915,
Bush and Baxter worked and operated the Minnie
mine and shipped ores therefrom, realizing about
$83,500 net.   Out of this Baxter accounted to Irish
for ten per cent of one-sixth.   On July 19, 1915, Bush
and Baxter, and Baxter as attorney in fact of Irish,
entered into an optional contract of sale of the
Minnie mine, and also the Portland mining claim
to the American Smelting & Refining Company, and
received in payments on that account $141,953.62.
Some time before this sale in 1914 or 1915 Bush and
Baxter located in their own names a piece of ground
adjoining the Minnie, under the name of the Portland
mining claim, and in apportioning the sum received
from the American Smelting & Refining Company
they allowed five-eighths to the Minnie and three-

eighths to the Portland, and Baxter accordingly remitted to Irish one-sixth of five-eighths of the sum paid by the company, instead of one-sixth of the total sum received from the optional purchaser.

The reason that the matter was presented to the superior court while acting as a probate court was because of the following circumstances: The administrator, on October 3, 1916, filed an inventory and appraisement of the Baxter estate, and listed as an asset thereof Baxter's interest in the copartnership, consisting of Bush, Baxter, and Irish, organized for the operation of the Minnie mine. This item was carried through the administration, and appeared, as stated, in the administrator's final report and petition for distribution of the estate. Irish, before the date fixed for hearing on final report of administrator, filed with the court his objections to the final account, and therein set forth his claim to the sum of $19,327.34 in the hands of the administrator, based upon the theory that he was entitled to the same by reason of his being a member of the partnership to the extent of one-sixth of whatever was realized out of the Minnie mine. The answer of the administrator to the above claim of Irish states that, notwithstanding the inventory and appraisement and other documents and court orders proceeded upon the theory and recognized the existence of a copartnership between Bush, Baxter, and Irish at the time of Baxter's death and prior thereto in the operation of the Minnie mine, no such partnership in fact existed; that Bush and Baxter were partners in the operation of said mine, and had divided equally the profits therefrom; that Baxter had an agreement with Irish to the effect that he would pay Irish ten per cent of one-sixth of the profits from such operation, which had been done. He also alleges that the settlement with Irish on the basis of five-eighths of the

amount realized from the American Smelting & Refining Company was proper, and claims that Irish had been overpaid the sum of $200 on account of one-sixth of the profits being given him, instead of ten per cent of one-sixth thereof accruing by operation of the mine after Baxter's death.

Irish's reply pleads that, because the inventory and appraisement, final account and petition for distribution, and statement of account rendered him upon request by the administrator all recognize the co-partnership between Bush, Baxter, and Irish, the administrator is estopped from denying such partnership; that but for such representations he would have taken action to protect his interests at the time the inventory was filed; that by reason of said partnership being so shown to exist, no occasion arose for action until the estate was about to be closed without a partnership accounting.

Upon the issues thus formed a trial was had. The court made thirty-nine findings of fact. The material ones, summarily stated, are:

(1) That Bush and Baxter composed a partnership to operate, and as such did operate, the Minnie mine from June, 1914, to July, 1915.

(2) That Baxter had agreed to pay, and Irish had agreed to accept from Baxter, ten per cent of one-sixth of the net profits from such operation.

(3) That on July 19, 1915, the Minnie mine was optioned to the American Smelting & Refining Company, and that there was paid thereon in cash and royalties the sum of $141,953.62.

(4) That Bush and Baxter, after the American Smelting & Refining Company abandoned their option, resumed operation of said mine, and continued to operate until Baxter's death, without any agreement with Irish as to what he should receive.

(5) That after Baxter's death Bush continued to operate said mine.

(6) That the Portland mining claim was of no actual value, and that all the money received from the American Smelting & Refining Company on account of sale was for the Minnie mine.

(7) That in fact no copartnership at any time actually existed between the said Bush, the said Baxter, and the said Irish, but that the said Irish was at all times simply a co-owner, with the other parties above mentioned, in said mining claim owning an undivided one-sixth interest therein.

The court, allowing Irish ten per cent of one-sixth of the profits realized in the operation of the mine by Bush and Baxter prior to the optional sale, and one-sixth of the purchase price paid on option and one-sixth of the profits realized thereafter, determined that the administrator should pay to Irish $13,212.54, with six per cent interest from October 23, 1917, and all costs. From this order both the administrator and Irish prosecute separate appeals, the other case being numbered 1827. The questions in both cases being the same, the disposition of this case will apply to the other.

Messrs. Richey & Richey, for Appellant.

Messrs. Wright & Darnell, for Appellee.

ROSS, C. J. (After Stating the Facts as Above.)— We are satisfied that the court's findings of fact are amply supported by the evidence, and assignments of error directed at the findings will not be discussed. In a memorandum opinion the trial judge very carefully and painstakingly analyzed the evidence, and we are in entire accord with his conclusions thereon.

Now, if these facts show anything it is that the Baxter estate was indebted to Irish: First, upon a contract to pay ten per cent of one-sixth of certain moneys realized from the operation of the Minnie

mine by Bush and Baxter; and, second, that Baxter, as the agent of Irish, had come into the possession of certain moneys belonging to Irish out of the sale of the Minnie mine to the American Smelting & Refining Company, and that the same became and was a trust fund, whether in his possession or in the possession of his personal representatives, and was not and never became a part of the assets of Baxter's estate. *First Nat. Bank* v. *Hummel,* 14 Colo. 259, 20 Am. St. Rep. 257; 8 L. R. A. 788, 23 Pac. 986; *Lathrop* v. *Bampton,* 31 Cal. 17, 89 Am. Dec. 141; 11 R. C. L. 281, par. 323.

As to the first item, it being a debt of Baxter's upon contract, and, after his death, a debt of his estate, the only way to make it a legal charge against the estate was to pursue the method provided by the statute by filing with the administrator for allowance a verified claim within the time fixed by law (paragraphs 882, 883, Civ. Code 1913), and, in case of its disallowance by the administrator or the judge, institute a civil action in the court having jurisdiction to hear and determine the matter. Paragraph 887, Id. This was not done.

As to the second item, although it was a trust fund and not a part of the Baxter estate, we think Irish, at his option, might have regarded Baxter's and the personal representative's conduct in connection therewith as a conversion of the funds, and filed a claim against the estate as for debt, and upon its disallowance brought a civil action in the proper court to establish his claim, or he could have instituted a suit on the equity side of the court for the purpose of having the personal representative declared his trustee of that particular fund, in which case there would have been no occasion formally to present it as a claim against the estate. He did neither of these things.

XXII Ariz.—7

What he did was to invoke the probate side of the court to take jurisdiction of and settle what he claimed was a partnership accounting. Had the facts disclosed the existence of a partnership as he contended, the statute plainly states that ''the surviving partner has the right to continue in possession of the partnership and to settle its business,'' accounting to the administrator of the decedent's estate. Paragraph 970, Id.

The law is well settled that the superior court, exercising probate jurisdiction, cannot entertain an action for partnership accounting. Our paragraph 970 was taken from California, and has been construed by the courts of that state. In *Andrade* v. *Superior Court,* 75 Cal. 459, 17 Pac. 531, the court said:

''The probate court has no authority to settle and adjust accounts between a surviving partner and the representative of a deceased one. Its power is limited to requiring the survivor to account. . . . If the existence of a partnership between a decedent and survivor is denied by the latter, the probate court cannot adjudicate the question and decree the existence or nonexistence of the relation.''

Also *Theller* v. *Such,* 57 Cal. 459. Utah, whose statute is the same as ours and California's, has adopted this view. *In re Tripp's Estate,* 51 Utah, 359, 170 Pac. 976.

While, had the evidence disclosed a partnership as contended it would, if the case had been pending in a proper court, have obviated the necessity of filing any claim with the personal representative before instituting an action for accounting (*Franklin* v. *Trickey,* 9 Ariz. 282, 11 Ann. Cas. 1105, 80 Pac. 352), in this instance it would have had the effect of depriving the probate court of the power to act in the matter.

Claims against an estate in administration are not allowed or disallowed by the court, but by the judge. Paragraphs 884–888, Id. When suit is necessary to establish a claim against an estate, it must be brought in the same forum and in the same form as it would have been brought against the debtor had he not died, the only material change being a substitution of the personal representative for the deceased, and, in a proper case, the presentation of the claim, properly verified, before suit.

For the reasons above suggested, the administrator appellant has made the point that the probate court had no jurisdiction of the subject matter in dispute, and therefore was without power to hear and determine the questions involved, and that his order directing the administrator to pay Irish what was found due him was void. This question was not presented to the lower court, and was not passed upon by the learned trial judge. It was first presented here, and if it were possible to waive the question of jurisdiction, it was done by all the parties acquiescing in the proceedings had. As the question of the court's jurisdiction may be raised at any time, we have no choice except to pass upon it. We are satisfied that the whole proceeding was without the jurisdiction of the probate court, and so hold. This leaves the questions involved open to litigation in a proper forum as though they had never been tried in this proceeding. The order of allowance to Irish is vacated and set aside because the probate court had no power to make it.

BAKER and McALISTER, JJ., concur.