[Civil No. 3381. Filed January 29, 1934.]

[29 Pac. (2d) 139.]

BERNARD NOWLAND, C. L. DALTON and FRANK H. LYMAN, as Executors of the Estate of JOSEPH MONIHON, Deceased, Appellants and Cross-appellees, v. ANNA VINYARD, Executrix of the Estate of SUSAN MONIHON, Deceased, Appellee and Cross-appellant.

Mr. L. J. Cox, for Cross-appellant.

No appearance for Cross-appellees.

ROSS, C. J.—This appeal involves the court's rulings or orders settling the accounts of the executors of the estate of Joseph Monihon, who died in Phoenix, Arizona, testate, on January 15, 1928, leaving surviving him his wife but no issue. He left separate property and also his one-half in the community. In his will he gave certain specific legacies to his wife and a number of his relatives and provided that after the legacies were taken care of the residue should go to certain nieces and nephews. He named as executors of his last will Bernard Nowland, C. H. Dalton and Frank H. Lyman, who represent his estate in this litigation. These executors took possession of both the separate and community property and proceeded to administer them together, but kept and made no separate account of the expenses and

charges of administration as between the two. The appraised value of the separate estate was $27,600, and of both estates $145,411.23. All of the debts were treated as community debts.

The executors made their first annual report on October 2, 1930, in which was exhibited the cash receipts and also disbursements. This report contained an itemized statement of allowed claims, current expenses of administration, payments of taxes, paving assessments, legacies paid, etc. It stated that all approved and allowed claims against the estate had been paid, as also the expenses of the last illness of deceased and his funeral expenses.

The executors filed their second annual report on November 7, 1932.

These two reports showed that the executors had collected on account of the community the sum of $58,073.90 in cash and on account of the separate estate $27,600, or all told $85,673.

Susan Monihon died November 1, 1931. At that time her one-half interest in the community property was still in the possession and control of the executors of her husband's estate. They had not turned over to her her one-half interest in the community, although in their reports they had shown that all debts against the community had been paid and satisfied. Anna Vinyard was appointed as her executrix, and on November 10, 1932, she filed a petition asking that the court order turned over to or allotted to her one-half of the community, which request was resisted by the executors on the ground that the community estate was indebted to the separate estate of Joseph Monihon in the sum of $7,322, which had been advanced by the executors from the separate estate to pay obligations of the community. In her petition asking that one-half of the community property be turned over to her as the personal representative of Susan Monihon, she filed objections to certain items

of the annual reports of the executors, asserting that certain expenses charged therein against the community should have been charged to Joseph Monihon's separate estate; that the fees and commissions charged by the executors were in excess of those allowed by law; that certain claims allowed against the community estate were not presented to the executors within the time allowed by law. She also asked that the court apportion the expenses of administration between the separate and community estate and charge the former with its proportion thereof. After a hearing the court ordered the executors to turn over to Vinyard one-half of the community, which after the payment of all the debts was of the approximate value of $100,000, but imposed the condition that she should execute a bond to the executors in the sum of $10,000 conditioned that she would pay "whenever required the portion of the estate of the said Susan Monihon, deceased, of its proportionate share of that certain claim found therein to be due the community estate of Joseph Monihon, deceased, to the sole and separate estate of Joseph Monihon, deceased, fixed at the sum of $7,322.00." The court further decided that the expenses of administration should be prorated as between the two estates, but postponed doing so until final settlement of said estate; otherwise the court overruled all objections to the second annual account of the executors.

The representatives of both estates appealed from the court's orders and rulings, but the executors' appeal was dismissed on motion of the executrix for want of prosecution or because of failure to have the record sent to this court as provided by law. The record was certified to this court upon the request of the executrix (cross-appellant) and the matter is before us on her appeal and briefs. The assignments of error are very numerous, and unfortunately the executors, although they might have appeared as

cross-appellees after they were dismissed as appellants, have failed to do so and we have no assistance from them. The points involved are new in this jurisdiction, and any help to their proper solution would have been gladly accepted by the court.

It seems that when the marital relation is dissolved by death the law casts the duty upon the personal representative of the decedent to attend to the administration of the community property, at least for the purposes of liquidating the community debts. It requires that he make an inventory of and cause to be appraised all of the estate of the decedent, including "the community estate" (section 3958, Rev. Code 1928), and that the inventory show "what portion of the property is community property and what portion is the separate property of the decedent" (section 3960). While it is provided that upon the death of a husband or wife one-half of the community property shall go to the survivor, it "passes charged with the debts against it" (section 985). Community debts are those contracted by the husband during the marriage and the community property is liable for them (section 2175). Since the survivor's one-half interest in the community is assigned or set over to him by operation of law, there is really no necessity for administration of it unless there are debts. We have so held. *Estate of Wilson,* 19 Ariz. 205, 168 Pac. 503.

If, however, there are community debts, the most convenient, speedy and practical method of clearing the estate is to confer on the personal representative of the decedent the administrative right and power, subject to the directions of the probate court, to collect its assets and pay its debts. This is what we think the legislature intended should be done. The expenses of administering the community property should, then, be borne by the whole community. Any charges against the community not authorized as ex-

penses, or any claim not a community debt or obligation, should not be paid out of the community funds.

In the further consideration of the questions we have before us, we should bear in mind that the "testamentary estate" of Joseph Monihon consists of his separate property and one-half of the community. He had no property interests in his wife's one-half of the community. In *La Tourette* v. *La Tourette*, 15 Ariz. 200, 137 Pac. 426, 428, Ann. Cas. 1915B 70, we said:

"The law makes no distinction between the husband and wife in respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community wherein both are equal. Its policy plainly expressed is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains."

The wife's one-half interest is as much hers before as after the death of her husband. It is, as before the dissolution, liable for the community debts. It must be understood, therefore, that Joseph Monihon's testamentary disposition of his estate is limited to his separate property and to his one-half of the community.

This brings us to the items in the annual reports of the executors objected to by the executrix but allowed and approved by the court as proper charges against the community.

1. The funeral expenses and the expenses of the last illness, amounting to $1,147.45, and the costs of a tombstone, amounting to $475.00, or all told $1,622.45, it is claimed by the executrix should be paid out of the testamentary estate of Joseph Monihon, and in this we concur. This was the wish of the decedent, for in the very first clause of his will he says: "My will is that all my just debts and

funeral expenses shall be paid out of my estate.''
This wish of the decedent is in conformity with the
law also. Section 4068 of the Revised Code of 1928
provides: ''The debts of the estate shall be paid in
the following order: 1. Funeral expenses; 2. the ex-
penses of the last sickness.'' The expense of the
tombstone is one that was voluntarily incurred by the
executors and, in view of the condition of the de-
cedent's estate, very properly so; but certainly they
had no power or authority to make it an obligation
payable out of the one-half interest in the community
of the surviving wife. In other words, it was not
a community debt.

2. The court approved claims in the sum of $2,-
106.52 which appear not to have been presented to
the executors for allowance until more than ten
months after the giving of notice to creditors of the
estate, and the executrix insists that these were
barred by the nonclaim statute. Section 3985, Rev.
Code of 1928; *Estate of Baxter,* 22 Ariz. 91, 194 Pac.
333; *Latham* v. *McClenny,* 36 Ariz. 337, 285 Pac. 684.
If, as a matter of fact, such claims were outlawed,
they should not have been allowed even though they
were debts of the community. The executrix having
objected to such allowances, they should not have been
approved as claims against the community interest of
Susan Monihon, if they were not presented within the
time fixed by law.

3. The executors charged commissions in the sum
of $5,700. The executrix claims that this is exces-
sive. She would have their commissions calculated
upon the total *cash receipts* from the community es-
tate and the separate estate, and if she is right in
this contention, then the commissions charged would
be too much; the total cash receipts being only $85,-
673.90. The statutes, however, fix a different basis
for computing the compensation of the personal
representative. Section 4051 allows commissions

"upon the amount of the whole estate accounted for." The inventoried value of the two estates is $145,411.23, and if the compensation be figured on that value, at the rates provided in the statute, the commissions charged are not excessive. No one has questioned the appraised valuations. The objection to this item was properly overruled. 11 Cal. Jur. 1162, §§ 765, 766.

4. Apparently the chief grievance of the executrix is the failure or refusal of the court to apportion, as between the separate estate and the community estate, the expenses of administration. The court's ruling on that point was of such a nature as to present no question that may be reviewed on appeal. The court indicated that upon the final settlement by the executors the expenses of administration would be apportioned as between the two estates. Such an apportionment should be made (11 Cal. Jur. 487, § 239), and if and when made it does not conform with the principles of law and equity, it may be reviewed but not until then.

5. She also complains because the court required her to execute a $10,000 bond to the executors conditioned that she would pay her proportion of the indebtedness of the community to the separate estate if and when required to do so. We do not find it necessary to pass on this question. It appears that the order of the court in that regard was complied with by the executrix. She executed the bond and was given the one-half interest of the community belonging to Susan Monihon's estate.

The cause is remanded, with directions that further proceedings in the matters herein be had in accordance with this opinion.

LOCKWOOD and McALISTER, JJ., concur.