507 P.2d 99

**In the Matter of the ESTATE of V. L. HASH, aka Vivian L. Hash, Deceased, Petitioner,**

v.

**Laurens L. HENDERSON, Superior Court Judge sitting in Probate, Maricopa County, Arizona, et al.; and the heirs at law of Ossie L. CASSELL, Deceased, Real Parties in Interest, Respondents.**

No. 11087.

Supreme Court of Arizona,
In Banc.

March 8, 1973.

Rehearing Denied April 6, 1973.  See 334.

Hash, Cantor & Tomanek, Phoenix, for petitioner.

Charles T. Stevens, Phoenix, for respondent Laurens L. Henderson.

Shimmel, Hill & Bishop, P. C., by Richard B. Johnson, Phoenix, for real parties in interest.

Moise Berger, Maricopa County Atty., by David B. Krom, Deputy County Atty., Phoenix, for intervenor Wilson D. Palmer.

HAYS, Chief Justice.

This is a special action initially brought in this court by the executors of the estate of V. L. Hash, deceased. Because of the novelty of the legal questions involved and of the possible importance to several hundred persons, we accepted jurisdiction on January 2, 1973, and on the same day granted leave to the clerk of the Superior Court to intervene.

V. L. Hash was a highly respected attorney, practicing in Phoenix for many years until his death several years ago. He had a large practice in divorce cases among persons in the lower economic strata. It is a truism, not only in Phoenix, but in most of the United States, that in divorce cases brought on behalf of people who are having a hard time making ends meet, the plaintiff's lawyer is not likely to be paid for his work unless he gets his fee in advance. Since lawyers have nothing to sell but their time, there is a limit to how much free work they can undertake. Some parts of this problem have been partially solved by the establishment of legal aid and "store-front" offices where the poor may get help from qualified lawyers without pay, but in the days of Mr. Hash's practice, such innovations were not very extensive.

Rule 58(a), Arizona Rules of Civil Procedure, 16 A.R.S., provides that in certain cases, including divorce cases, the judge

shall promptly settle and approve the form of judgment, which shall be approved and signed by the judge and filed with the clerk of the court. That constitutes the entry of such judgment, and the judgment is not effective before such entry.

There are always times when it is necessary that the trial of a divorce action be expedited, even though the attorney's fee cannot be produced with equal expedition. As a result, until a few years ago, lawyers often tried divorce cases before receiving their fees; they secured a divorce decision, prepared the decree, and had it approved and signed by the trial judge. However, once the client had his divorce, the fee would be low on the list of the client's priorities, unless the lawyer retained some leverage that he could apply to enforce payment. The solution adopted by Mr. Hash was the same as that adopted by most lawyers not only throughout Arizona, but in many other states as well. That solution was to refuse to file the decree until payment of his fee was received and to tell his client that he was not divorced until the decree was filed. No aspersions are intended to be cast upon Mr. Hash's modus operandi, since this was a fairly universal practice during his years at the bar. This practice no longer prevails in this state.

The result of this procedure, over a period of years prior to Mr. Hash's death, is that there were found in his effects nearly two hundred signed divorce decrees that had never been filed. This means that there are nearly two hundred couples whose divorce decrees have been signed but who are not divorced.

It was Mr. Hash's custom to explain this procedure to each and every client for whom he obtained a divorce, but it is by no means clear that all of his clients understood him, believed him, or even remembered the advice. It is also probable that in those cases where the divorce was granted by default, the defaulting party knew nothing about the requirement that the decree be filed before the divorce became effective. Many of them may have remarried, thinking that they had been divorced. In one case, a client remarried and was charged with bigamy. The production of the decree by the executors, and its filing by the defense counsel, enabled the man to get the criminal charges dropped.

These two hundred divorces were obtained in the period between 1927 and 1955, which means that nearly twenty years have elapsed since the most recent divorce, and over forty-five years since the earliest. In the natural course of events, some of the parties have died, some have moved, and some have left the state and perhaps even the country.

The executors have been diligent in their attempts to trace the parties by checking present and past city directories, telephone directories, utility connection records, etc. They have sent, by regular mail, letters to every client or party whose address appears in Mr. Hash's records. Not one of the parties has been located in this way.

(While referring to these matters as divorces, it should be understood that they also include separate maintenance actions).

Mr. Hash's estate has been open for several years and the residuary legatees are demanding distribution. The executors fear that they may, by distributing the assets of the estate, become personally liable to the unknown parties to these divorces, in case they are damaged by any action or inaction of the executors. The executors, for that reason, are demanding that the legatees first execute indemnity bonds for the amounts which they receive in distribution.

In Mr. Hash's records of these divorces, there appear notations, probably in his handwriting, in some cases to the effect that the divorce was no longer desired and the decree should not be filed. Some of these notations indicate that they were the result of telephone messages from the parties. In other cases there are written letters to that effect from one or both of the parties involved. There is no way to ascertain the authenticity of either the calls or the letters.

The petition filed in this court, and duly verified, states that from the knowledge of the executors it is quite possible that many of the parties have resumed their marriages and do not want to be divorced.

The executors express concern over the impact upon various matters if the decrees are now filed nunc pro tunc as permitted by Rule 58(a), Arizona Rules of Civil Procedure. The matters are: social security payments, veterans' benefits, marital status, retirement benefits, inheritance by children of the parties, property rights, etc.

The executors further state that they filed with the Superior Court, in the estate of which they are executors, a petition for instructions as to what to do with the above-mentioned divorce decrees, that testimony was taken, that the heirs were notified, and that the probate judge entered an order requiring the executors to:

(a) Send notice by certified mail to the last known addresses of the parties to the divorce proceedings, and

(b) Advertise for four successive weeks in two Phoenix and two Tucson newspapers, and

(c) To see that the notice and advertisements require all parties to appear on February 21 to show cause why all of the decrees should not be filed nunc pro tunc with the Maricopa County Superior Court Clerk.

The executors do not want to follow that procedure because:

(a) There is no provision for an indemnity bond.

(b) It will divorce couples who are living together in reliance upon the absence of a divorce decree and Mr. Hash's advice that the divorce was not in effect.

(c) The probate judge involved has no jurisdiction to enter orders in the divorce actions.

(d) A better solution than that ordered by the Superior Court is to "lodge" the decrees with the clerk of that court, to remain there until one of the parties to the divorce requests the filing.

(e) Since none of the letters previously addressed to the last known addresses were delivered, it is absurd to go to the expense of sending certified letters to the same addresses, some of which are vacate lots from which the buildings have been removed.

The probate judge, the clerk of the Superior Court, and the heirs of Mr. Hash have responded or intervened in favor of the procedure set out in the probate order of which the executors complain.

We have studied the possibilities carefully. It is difficult to anticipate every possible problem that may arise from the above situation. The two most easily discernible are (1) parties to these divorces who have, since the date of the divorce decree, become reconciled and are still living together, or were until the death of one, and (2) parties who have remarried. It is obvious that filing the decrees and entering them nunc pro tunc will cause consternation to persons in class (1), and allowing the decrees to remain somehow in limbo will make bigamy charges and other problems for those in class (2). There is no one complete solution.

It is, however, clear that filing these decrees and making the entry nunc pro tunc will cause problems for the least number of persons. Bigamy charges will be eliminated for all time. This is the most dangerous and difficult situation. Probably the only persons who will be harmed are the parties who have gone back together, and their harm is slight because (a) most of them will never know of the filing of the decree, and (b) the Superior Court has equitable power, on a proper showing by the parties, to set aside the divorce decree for the very obvious reason that the parties relied upon its not being filed when they decided to live together later.

Basically, therefore, the order of the probate judge is the practical and most just solution. Slight modifications, however, must be made in his order:

1. The publishing, as ordered in the four principal Arizona newspapers, is a

proper requirement. Friends of the parties may notify them, on seeing the notice. The February 21 date may have to be reset to allow time for the advertising.

2. The requirement of certified letters to the parties is a futile gesture and, since it is expensive in both time and money, this requirement should be eliminated.

3. There is no practical way to write a bond to protect the executors for a nearly unlimited time, for a limited premium, and there is no reason to require one, since the statutes of limitations, and equitable considerations of estoppel, laches, clean hands, etc., will offer sufficient protection. The executors will have the protection afforded by the court's ordering them to take this action.

4. Unforeseen possibilities that may arise in the future will be handled on an ad hoc basis in a way that will do substantial justice to all parties.

5. The notice to be published shall contain all of the names, last known addresses of the parties, and dates of divorce decrees, and shall occupy at least thirty-four column inches of the newspaper in which it is published.

6. If any party to any of the above divorces appears and opposes the filing of the decree, the matter shall be assigned to a judge other than a probate judge and handled as any other equity case.

7. To each decree filed nunc pro tunc, a clear, legible copy of this opinion shall be attached.

8. The filing fees and cost of copying this opinion shall be paid by the estate.

9. The order of the probate court, dated November 15, 1972, as modified by this opinion, is hereby adopted by this court and promulgated as an order of this court, thus disposing of the question raised by the executors, of whether the probate judge had jurisdiction to enter this particular order.

10. This opinion expresses the reasons for the nunc pro tunc entry of the decrees as required by Rule 58(a), Arizona Rules of Civil Procedure.

Anything in the case of Black v. Industrial Commission, 83 Ariz. 121, 317 P.2d 553 (1957), which may be inconsistent with or contrary to the foregoing opinion is hereby overruled.

So ordered.

CAMERON, V. C. J., HOLOHAN, J., and HAIRE, Judge, Court of Appeals, Division 1, concur.

NOTE: Justice LORNA E. LOCKWOOD did not participate in the determination of this matter. Judge LEVI RAY HAIRE, Court of Appeals, Division 1, was called to sit in her stead.

STRUCKMEYER, Justice (dissenting):

I am unable to agree with the disposition of this case and, accordingly, feel compelled to dissent.

Certain facts basic to the decision should be emphasized. The Superior Court entered an order directing petitioners, executors of the estate of V. L. Hash, deceased, to show cause why they should not be required to file some 200 divorce decrees and why orders should not be made in each case making the decrees effective nunc pro tunc as of the date of their signing by the trial judge in whose court they originally were heard. Petitioners invoked the original jurisdiction of this Court under Article 6, § 5, of the Constitution of Arizona, A. R.S., to prohibit the Superior Court sitting in probate from proceeding on the order to show cause, asserting both a lack of jurisdiction to order the decrees filed and filed nunc pro tunc.

It cannot be emphasized too strongly that the Honorable Laurens Henderson, as a judge sitting in a probate case, is proposing to direct the filing of final judgments and enter orders nunc pro tunc in 200 pending divorce cases. No legal basis whatsoever exists for this interfering in the affairs of 400 people by the probate court other than that signed decrees were found in the personal effects of V. L. Hash after his death.

Marriage is a status based upon civil contract. Southern Pacific Co. v. Industrial Comm'n., 54 Ariz. 1, 8, 91 P.2d 700, 703 (1939). It is specifically favored and protected by the law. It is a voluntary status and personal to the individual, subject only to legislative control of the circumstances under which it may be exercised both in joinder and in separation. The decisional right as to whether to enter into or terminate a marriage contract is so exclusively personal to the individual that no authority can be found which permits another to make the choice for him; certainly not because some judge thinks it is better that way.

Under Arizona rules of practice, the final legal step necessary to the termination of a marriage is the filing of the signed decree of divorce. Rule 58(a) of Civil Procedure, A.R.S. 16. There is no intermediate state to marriage. Either a person is or he is not married. Hence, until a decree is filed, there is no divorce. Until filing, a litigant has the right to change his or her mind, even to abandoning the divorce proceeding. This decisional right, so personal to the individual, is what is now being usurped by the Superior Court.

By the Constitution of this State, Article 6, § 14, the Superior Court has original jurisdiction over certain classes of cases. Among these are criminal cases amounting to felonies, cases in which the demand or value of the property in controversy amounts to $500.00 or more, divorces and annulments, "[m]atters of probate," and such other jurisdiction as may be provided by law.

So, a judge may ascend the bench and, in quick succession, sentence a defendant in a criminal case, hear and render judgment in a default divorce, grant or deny a motion for a new trial in a civil case, and appoint an executor in a probate matter. But in each case he exercises the jurisdiction peculiar to the class of the case which he is then hearing. He cannot, for example, in the criminal case enter an order giving damages to the complaining witness in the case, even though the facts would justify damages if a civil suit were brought.

" 'A court is a creature of the law, instituted for the determination of questions of law and fact under defined restrictions and limitations. The territorial limits of its power, the subjects and classes over which its power may be exercised, the terms upon which it may put its power into action, are as firmly and clearly established as the right to adjudicate when authorized to do so; and, though a court of general jurisdiction, it must proceed in the manner and upon the conditions imposed by the law, * * * .' " State ex rel. Pollard v. Superior Court of Marion County, 233 Ind. 667, 671–672, 122 N.E.2d 612, 615 (1954) (quoting from Lowery v. State Life Ins. Co., 153 Ind. 100, 102, 54 N.E. 442, 442–443 (1899)).

The question which is primary and fundamental to the disposition of this case is whether a Superior Court judge sitting in probate has the jurisdiction to make and enter orders which purport to settle rights in other cases.

Arizona's probate law is almost identical with that of California and was adopted from that state, Shattuck v. Shattuck, 67 Ariz. 122, 128, 192 P.2d 229, 233 (1948); Byrd v. Phoenix Savings Bank & Trust Co., 62 Ariz. 474, 480, 158 P.2d 657, 659–660 (1945); In re Estate of Nolan, 56 Ariz. 366, 373, 108 P.2d 391, 394 (1940); Gibson v. Gordon, 30 Ariz. 310, 314, 246 P. 1036, 1038 (1926); and it is commonly said both here and in California that the Superior Courts are courts of general jurisdiction. See, e.g., Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 311, 146 P. 203, 206 (1914).

While the words "general jurisdiction" have a certain rotundity of sound pleasing to the ear, they add nothing to powers or jurisdiction of the court, for these are circumscribed by the Constitution and statutes. The jurisdiction of the Superior Court is general because it has the power or jurisdiction to hear and determine all

classes of cases and controversies except those otherwise carved out specifically by the Constitution and placed in an inferior court. That a court is a court of general jurisdiction does not mean that because the judicial robe has been donned a judge has unlimited power to impose punishment or reward righteousness as the occasion is deemed suitable.

What constitutes jurisdiction in "matters of probate" is well understood and strictly limited by statute. "Matters of probate" are the ascertainment and determination of the persons who succeed to the estate of a decedent, either as heir, devisee or legatee, and the amount or proportion of the estate to which each is entitled after the payment of debts. *See, e.g.*, McClave v. Electric Supply, Inc., 93 Ariz. 135, 379 P.2d 123 (1963); In re Jacob's Estate, 81 Ariz. 288, 305 P.2d 438 (1956); In re Estate of Jones, 10 Ariz.App. 480, 460 P.2d 16 (1969).

Prior to the adoption by Arizona of its Constitution and its probate statutes, the California Supreme Court, in 1902, in In re Estate of Davis, 136 Cal. 590, 597, 69 P. 412, 414–415, said:

"Under the fundamental law there is a probate jurisdiction vested in the superior court. It may be said that the probate court is gone, but that the probate jurisdiction remains. And that jurisdiction is now vested in the same court that exercises jurisdiction in cases of law and equity. Yet the *probate jurisdiction of the superior court is different from its law and equity jurisdiction, in this:* it is essentially a jurisdiction under the control of the state legislature. That law-making power may enlarge it or may restrict it. The character and extent of the jurisdiction is not only a matter under legislative control alone, but the procedure by which that jurisdiction may be invoked, and rights thereunder adjudicated, is expressly laid down by statute; and that procedure must be followed, or relief under that jurisdiction cannot be secured. While the superior court in this state exercises both equity and pro-bate jurisdiction, still the procedure to be followed in seeking relief within those two jurisdictions is widely varied. And if the probate procedure laid down by the Code is followed, then only relief under probate jurisdiction can be granted. In such a case general equity relief cannot be secured."

The Supreme Court of California has more recently said, in Estate of Bissinger, 60 Cal.2d 756, 764, 36 Cal.Rptr. 450, 455, 388 P.2d 682, 687 (1964):

"The rule is that 'while the superior court, sitting in probate, is a court of general jurisdiction, "the proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to exercise the jurisdiction conferred upon it, and can only determine those questions or matters arising in the estate which it is authorized to do. Thus, in the exercise of the powers conferred upon it, its jurisdiction is limited and special, or limited and statutory." ' "

So, in following California, we said in Shattuck v. Shattuck, supra:

"This court has held that insofar as the Superior Court exercises jurisdiction in matters of estates of deceased persons it is a court of probate and its jurisdiction and functions in that respect are distinct from its jurisdiction and functions when sitting as a court of law and equity. State ex rel. Young v. Superior Court, 14 Ariz. 126, 125 P. 707; Garver v. Thoman, 15 Ariz. 38, 135 P. 724." 67 Ariz. at 128, 192 P.2d at 233.

and in Vargas v. Greer, 60 Ariz. 110, 118, 131 P.2d 818, 821 (1942):

" ' "Its power when sitting in probate matters is derived from the statute, and it cannot go beyond the provisions of the statute." ' "

While the Superior Court as a court of general jurisdiction may have the power to entertain an action for a partnership accounting, it cannot do so while exercising probate jurisdiction: In re Estate of Bax-

ter, 22 Ariz. 91, 194 P. 333 (1921). There, this Court said:

> "We are satisfied that the whole proceeding was without the jurisdiction of the probate court, and so hold." 22 Ariz. at 99, 194 P. at 335.

In Horne v. Blakely, 35 Ariz. 39, 45, 274 P. 173, 175 (1929), in deciding that the Superior Court sitting in probate could not litigate the ownership of property listed as part of the estate, we said:

> "He [the purported true owner] must proceed by a suit at law or in equity."

In this case it was argued:

> "that the proceeding, although formally in probate, was as a matter of substance in equity, and he contends that this court should disregard the form and look to the substance of the matter, * * *." 35 Ariz. at 46, 274 P. at 175.

We answered, conceding that the court was always disposed to disregard form in favor of substance:

> "There is, however, a limit beyond which we cannot go." 35 Ariz. at 47, 274 P. at 175.

In In re Jacob's Estate, supra, 81 Ariz. 288, 293, 305 P.2d 438, 441 (1956), we held:

> "At the outset it should be made clear that in deciding the question raised by this appeal it is wholly unnecessary and would be manifestly improper for us to determine (a) whether the power of attorney given by decedent to his son * * * was validly exercised, or (b) the validity of what is termed the family agreement, this for the reason that a superior court, sitting in probate, has no jurisdiction or authority to determine such issues."

Finally, the Court's action raises a substantial question of due process of law. As to this, the Supreme Court of the United States aptly stated the controlling principle in Standard Oil Co. v. Missouri, 224 U.S. 270, 281–282, 32 S.Ct. 406, 409, 56 L. Ed. 760, 767–768 (1912):

> "The Federal question is whether, in that court, with such jurisdiction, the defendants were denied due process of law. Under the 14th Amendment they were entitled to notice and an opportunity to be heard. That necessarily required that the notice and the hearing should correspond, and that the relief granted should be appropriate to that which had been heard and determined on such notice. For even if a court has original general jurisdiction criminal and civil, at law and in equity, it cannot enter a judgment which is beyond the claim asserted, or which, in its essential character, is not responsive to the cause of action on which the proceeding was based.
>
> 'Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. . . . The judgments mentioned, given in the cases supposed, would not be merely erroneous, they would be absolutely void, because the court, in rendering them, would transcend the limits of its authority in those cases.' "

It can only be concluded that the Superior Court sitting in probate is wholly without jurisdiction to order these decrees filed in divorce proceedings and enter orders in each case directing they be effective nunc pro tunc.

Nor can the probate court confer upon itself additional jurisdiction by its attempt to lift itself by its bootstraps, so to speak, in ordering in the probate proceedings no-

tice of its proposed action published and mailed to the 400 people whose rights are involved. If this is a constitutional method of procedure, then no person's rights can be saved from willy-nilly judicious intermeddling.

The executors, in their petition to this Court, specifically question the jurisdiction of the Superior Court to enter the proposed judgments in this language:

"That the Superior Court had no jurisdiction to make entries in other actions still pending before this Court, to wit: the divorce proceedings referred to in petitioners application for instructions."

This question of jurisdiction is answered by the majority at the end of their decision in this language:

"The order of the probate court, dated November 15, 1972, as modified by this opinion, is hereby adopted by this court and promulgated as an order of this court, thus disposing of the question raised by the executors, of whether the probate judge had jurisdiction to enter this particular order."

If I understand the majority, what they are saying is that because the Supreme Court has adopted and promulgated an order similar to that of the Superior Court, there has somehow been conferred additional jurisdiction upon the Superior Court which by the Constitution it did not possess before.

On the one hand, Article 6, § 5 of the Constitution of Arizona specifies the jurisdiction of this Court. Needless to say, it does not provide that the Supreme Court can enlarge or restrict the Superior Court's jurisdiction. The Constitution does provide that the Supreme Court shall have "Power to make rules relative to all procedural matters in any court." But this is not a question of by what procedure the Superior Court acts. It is a question of whether it may act at all. On the other hand, the Superior Court's jurisdiction to act in "probate matters" stems from Article 6, § 14 of Arizona's Constitution and

the statutes as made and provided by the Legislature. And this Court can neither enlarge nor diminish such jurisdiction.

*Second,* I am of the opinion that the Superior Court of Maricopa County cannot enter these judgments nunc pro tunc.

At the outset, it should be stated that Rule 58(a), Arizona Rules of Civil Procedure, does not permit the filing of these decrees.

Rule 58(a) provides:

"All judgments shall be in writing and signed by a judge or a court commissioner duly authorized to do so. The filing with the clerk of the judgment constitutes entry of such judgment, and the judgment is not effective before such entry, except that in such circumstances and on such notice as justice may require, the court may direct the entry of a judgment nunc pro tunc, and the reasons for such direction shall be entered of record. The entry of the judgment shall not be delayed for taxing cost."

That portion of Rule 58(a) providing that the court may direct the entry of a judgment nunc pro tunc was adopted by amendment effective June 1, 1970. The State Bar Committee, at whose instigation this Court adopted the amended rule, set forth the reason for the amendment as follows:

"Black v. Industrial Commissions, 83 Ariz. 121, 317 P.2d 553 (1957) has been viewed by some as prohibiting the entry of an order or judgment nunc pro tunc in Arizona. The purpose of the amendment is to reject the basis for that view and to adopt the rationale of the dissenting opinion of Justice Struckmeyer in that case. The amendment does not specify the conditions, circumstances and effects involving the entry of a judgment or order nunc pro tunc. These are best determined by reference to the considerable body of law on the subject. See e.g. Mitchell v. Overman, 103 U.S. 62, 26 L.Ed. 369 (1880); * * *."

Since the amendment was not intended to specify the conditions or circumstances

controlling the entry of judgment or order nunc pro tunc, the question becomes, under what circumstances may a judgment be given retrospective effect?

The principle underlying the entry of a nunc pro tunc judgment was set forth by Justice Harlan in his oft-quoted language in Mitchell v. Overman, 103 U.S. 62, 64–65, 26 L.Ed. 369, 370 (1881):

> "The adjudged cases are very numerous in which have been considered the circumstances under which courts may properly enter a judgment or a decree as of a date anterior to that on which it was in fact rendered. . . . We content ourselves with saying that the rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up."

This Court has held that the object of an order nunc pro tunc is only the placing in proper form on the record the judgment that had been previously actually rendered in order that the record may speak the truth where its recording was omitted through inadvertence or mistake. American Surety Co. of New York v. Mosher, 48 Ariz. 552, 563, 64 P.2d 1025, 1030 (1936), appeal dismissed, 304 U.S. 550, 58 S.Ct. 1060, 82 L.Ed. 1522 (1938). And, of course, a clerk when he enters an order is obliged to show the date that he does it. He cannot date it back to the date the judge ordered the entry. Harbell Oil Co. v. Steele, 81 Ariz. 104, 105, 301 P.2d 757, 758 (1956). It must be entered nunc pro tunc at the direction of the judge.

In 1957, in Black v. Industrial Commission, supra, in a three to two decision, it was held that a minute entry reading "or-der for decree of divorce" was not a sufficient basis for the signing and filing of a divorce decree nunc pro tunc as of the date of the order for decree of divorce. To this decision, I dissented, being of the opinion that the facts showed a case of inadvertence. I also said, citing cases from many jurisdictions:

> "I can find no dissent to the proposition that where a judgment has actually been rendered and that rendition is reflected in the record of the court, the judgment may be entered nunc pro tunc *if the delay is not occasioned by the party applying.*" 83 Ariz. at 131, 317 P.2d at 560. (Emphasis added.)

In the present case, the facts as given are that it was Hash's custom to explain to every client that the client was not divorced until the decree was filed and that the decree of divorce would not be filed until his fee was paid. Were the 200 plaintiffs for divorce presently before the court seeking entry of decrees nunc pro tunc, they would have to explain that the delay was not occasioned by their acts. I do not, however, mean to imply that the opposing party in the divorce would not be entitled to the filing of the judgment with such an order upon a showing that they were unaware that the divorce decrees had not been filed. But, clearly, in their present posture the Superior Court may not order these judgments filed nunc pro tunc.

One further matter should be discussed. Petitioners, executors of the estate of V. L. Hash, stated to the Superior Court in their petition for instructions as to the disposition of the final decrees of divorce that "your petitioners believe the decrees should be deposited with the Clerk awaiting instructions from the individuals involved, and that proper instructions be given to the Clerk of the Court to insert notations in each file as to the location of the original decree with further proceedings pertaining to the filing of each of the said decrees to be determined on a case by case basis brought by the interested parties in

said domestic relations proceedings." It seems to me that this is the proper procedure, preserving to everyone concerned their rights without stretching the authority of the Superior Court.