600 P.2d 1375

**Ernestine J. IBACH,
Defendant/Appellant,**

v.

**Maxwell Russell IBACH, Jr.,
Plaintiff/Appellee.**

**No. 2 CA–CIV 2646.**

Court of Appeals of Arizona,
Division 2.

Jan. 31, 1979.

Rehearing Denied March 28, 1979.

Review Granted April 17, 1979.

Norman R. Freeman, Tucson, for defendant/appellant.

Slutes, Browning, Zlaket & Sakrison, P. C., by Thomas A. Zlaket, Tucson, for plaintiff/appellee.

## OPINION

HATHAWAY, Judge.

This appeal attacks the quashal of garnishment writs and a judgment for support arrearages.

Appellee-husband and appellant-wife were divorced in Arizona in 1971. The decree required husband to pay $250 per month spousal support. After moving to Colorado, husband unilaterally reduced support payments to $75 per month. In 1973, wife initiated an action to enforce the Arizona decree in Colorado under the Revised Uniform Reciprocal Enforcement of Support Act (URESA). A.R.S. Secs. 12–1651—1691. Husband answered, requesting the court to reduce or abate support because of changed circumstances. After a full hearing, the court ordered a reduction of support, stating:

"THE COURT: I have reviewed the entire picture. This man is having a difficult time adjusting to civilian live [sic]. He has been out, I don't know, couple of years, but his total income is $690.00 a month, from which his wife—his present wife has purchased a home and you are asking him to pay $250.00 a month to his first wife while she lives in a four-bed-room home in Tucson with a swimming pool, two automobiles, a '70 Maverick, a '69 Buick and sure, it is tough for her, I admit it's tough for her, but it is tough on all of us who on fixed incomes. It is tough on us too and if it was child support I look at it one way, but I think for alimony, she is going to have to look elsewhere for income. She may have to get a part-time job if she wants to maintain a four-bedroom home and swimming pool and two automobiles.

And these children are old enough to support themselves and if they are living at home, they should. And I think the fair and reasonable amount of support ordered by this Court will be in the amount of $75.00 a month."

A minute entry order dated August 29, 1973, recited that "defendant shall pay the sum of $75 per month for support and maintenance." The record is silent as to whether the support provision of the Arizona decree was modified. In 1976, wife initiated a second URESA action to collect arrearages. The Colorado court further reduced the support payments and expressly provided that support would terminate 12 months after arrearages were paid, unless otherwise ordered by the court.

In December 1976, wife garnished husband's military retirement pension for support arrearages from February 1973 to October 1976. After discovering that no order had been signed by the judge in the 1973 URESA proceeding, husband requested one. The judge who heard the URESA matter in 1973 signed an order on March 4, 1977, nunc pro tunc as of August 29, 1973, which recited that "the Order of September 2, 1971, [Arizona decree] requiring support and maintenance in the amount of $250.00 per month is hereby modified and reduced to the sum of $75.00 per month."

Husband moved to quash the writs of garnishment, the motion was granted without explanation, and a hearing was set to determine the amount of arrearages.

We agree with appellant that garnishment is an appropriate remedy to collect spousal support arrearages. The writs were quashed prior to our decision in *Sanchez v. Carruth*, 116 Ariz. 180, 568 P.2d 1078 (App. 1977), in which we held that because child support payments are not retroactively modifiable and are in the nature of final judgments once due, garnishment may be used to collect arrearages. The same reasoning applies to spousal support. Appellee's due process argument is without merit. *Sanchez*, supra.

■ Both Arizona and Colorado have adopted the 1968 amendment of Section 31 of the Uniform Reciprocal Support Act, which permits modification of prior support orders. ' See A.R.S. Sec. 12–1680, as amended, and Colorado Rev. Stat. Sec. 14–5–132.[1] Therefore, the Colorado court had jurisdiction in the URESA proceedings instituted by appellant to modify the 1971 Arizona support order if it specifically provided that the Arizona order was modified. However, URESA support orders which do not refer to prior support awards do not modify them. *Campbell v. Jenne*, 563 P.2d 574 (Mont.1977). The parties stipulated that if the Colorado court orders did not effect a modification of the support provision of the 1971 Arizona decree, the amount of arrearages is $8,660, but if the orders did, the amount is $1,050. The trial court agreed with appellee that the Arizona decree had been modified and awarded appellant $1,050.

■ Wife argues that the Colorado court lacked personal jurisdiction over her to modify the Arizona decree. Consent, however, is a valid basis for personal jurisdiction. H. Goodrich & E. Scoles, Conflict of Laws, Sec. 73 at 121 (4th ed. 1964). By initiating the URESA action, wife consented to the jurisdiction of the responding court as defined by URESA.

■ Were the Colorado orders entitled to full faith and credit, U.S.Const. art. IV, sec. 1, and if not, are they subject to collateral attack? A sister state judgment is not entitled to full faith and credit if the forum rendering judgment lacked jurisdiction. *Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Smart v. Cantor*, 117 Ariz. 539, 574 P.2d 27 (1977). To have jurisdiction, the forum must have, inter alia, jurisdiction to render the particular judgment given. *Walker v. Davies*, 113 Ariz. 233, 550 P.2d 230 (1976). We noted above that the Colorado court had jurisdiction to modify the Arizona decree. However, did it have jurisdiction to enter the 1977 order nunc pro tunc as of August 29, 1973? Courts have jurisdiction to enter judgments nunc pro tunc only to correct clerical as opposed to judicial mistakes. 46 Am.Jur.2d, Judgments, Secs. 199–201 (1969). If the Colorado court changed the substance of its original order when it entered its nunc pro tunc order in 1977 specifically modifying the Arizona decree, it lacked jurisdiction and the order is not entitled to full faith and credit. Because such order would be jurisdictionally defective, it may be collaterally attacked. *Walker v. Davies*, supra; cf. Annot., 70 A.L.R.2d 1131, 1142 (1960) (no reported cases specifically holding that a nunc pro tunc order to correct judicial error is subject to collateral attack.)[2]

---

1. A.R.S. Sec. 12–1680 provides in part:
   "A support order made by a court of this state pursuant to this article does not nullify and is not nullified by . . . a support order made by a court of any other state . . ., unless otherwise specifically provided by the court."

2. *Black v. Industrial Commission*, 83 Ariz. 121, 317 P.2d 553 (1957), rev'd on other grounds, 109 Ariz. 174, 507 P.2d 99 (1973), adopted the minority position that domestic nunc pro tunc judgments may be collaterally attacked unless the judgment recites on its face that competent evidence was presented to sustain the judgment or the court makes a record disclosing the error corrected. Although the judgment in this case is defective under the *Black* standard and therefore may be subject to collateral attack on that basis, because of its uncertain status, we do not base our decision on *Black*.

■ To decide the validity of the nunc pro tunc order,[3] we apply Colorado law as the law of the rendering forum controls. *Day v. Wiswall,* 11 Ariz.App. 306, 464 P.2d 626 (1970); 47 Am.Jur.2d, Judgments, Sec. 1236 (1969). Colorado follows the majority rule that judgments nunc pro tunc properly correct clerical but not judicial errors. *Green v. Hoffman,* 126 Colo. 104, 251 P.2d 933 (1952); *Oman v. Oman,* 477 P.2d 472 (Colo.App.1970). The error here was a judicial omission and not a clerical one. Therefore, the attempt to correct it by an order nunc pro tunc was of no avail. There being no effective modification of the Arizona decree in 1973, wife was entitled to the stipulated amount of $8,660.

The judgment is vacated with directions to enter judgment in favor of appellant for the sum of $8,660.

RICHMOND, C. J., and HOWARD, J., concur.

---

3. Husband argues that the clearly erroneous standard of appellate review applies to the trial court's determination that the nunc pro tunc order was proper. This standard applies to findings of fact, not conclusions of law. Rule 52(a), Rules of Civil Procedure, 16 A.R.S. Whether the Colorado court properly entered an order nunc pro tunc is a question of law, not of fact. The clearly erroneous standard, therefore, is inapplicable; this court may draw its own conclusions of law. *Owen v. Mecham,* 9 Ariz.App. 529, 454 P.2d 577 (1969).